JOHNSON vs. THE CITY OF MILWAUKEE and others.

MUNICIPAL CORPORATIONS: SPECIAL ASSESSMENTS: INJUNCTION. *(1) Power of municipal corporations to levy special assessments. (2) Limit of such power in Milwaukee. (3) Interference by injunction in such cases.*

1. The legislature of this state may authorize municipal corporations to levy special assessments upon the adjoining lots for the improvement of highways (by land or water) within the municipality.

2. Under the charter of Milwaukee as amended by ch. 401, P. & L. Laws of 1870, abutting property could be assessed for highway improvements only to the extent to which it was *actually benefited*, which was to be estimated *upon actual view* by the commissioners of public works; and where an apparent estimate of benefits, in such a case, rests absolutely on the estimated cost of the improvement, and not upon an actual consideration or estimate of actual benefits, the assessment is invalid.

3. Where such an assessment is invalid, equity will *restrain the issue of the certificate* to the contractor.

APPEAL from the Circuit Court for *Milwaukee* County.

*Johnson*, as the owner of a lot on East Water Street, in the city of Milwaukee, abutting on the Milwaukee river, brought this action to enjoin the issuing of a street commissioner's certificate against the lot, for dredging done in the river and made chargeable by the charter upon the lot. The charter, as it existed at the time of doing the work (and as set forth in a note *infra*), provided that the expense of dredging the river, to the extent of fifty feet in width on each side next to and along the dock lines, should be apportioned by the board of public works among the lots extending to the river, in proportion to the actual benefits conferred upon such lots, to be collected in the same manner as other special taxes are levied and collected. The complaint prayed that the contract made by the city might be declared void, and that the board of public works might be enjoined from executing to the contractors any certificate for the dredging done by them opposite to plaintiff's lot.

The facts as found by the court were as follows: 1. That on or about October 27, 1873, the board of public works of Milwaukee presented to the common council a schedule of the lots and parts of lots fronting on the Milwaukee river from Spring street bridge to Buffalo street, stating therein that the amount set opposite each lot and part of lot was the amount of benefit which the same would derive from the dredging. 2. That these amounts, as set opposite each lot and part of lot, were ascertained and fixed by adding to the several amounts

set opposite the corresponding lots and parts of lots in a former schedule of the estimated cost of the dredging prepared by the board, a uniform per centage of twenty per cent., to provide against the contingency that the actual expense of the dredging might exceed the estimated cost, and in no other manner and by no other process whatever. 3. That the board of public works did not make or pretend to make any estimate of the relative benefits of such dredging to the lots and parts of lots to be charged therewith, but only determined what amount the actual work to be performed opposite each of said lots would probably cost.

The court decreed the contract for the dredging, and the assessment of benefits and damages, to be illegal and void, and enjoined the issuing of a certificate upon plaintiff's lot on account of the dredging. Defendants appealed.

Briefs were filed by *Jenkins, Elliott & Winkler*, with *James G. Jenkins* of counsel, for the appellants, and *Fred J. Johnson* and *Dixon, Hooker, Wegg & Noyes* for the respondent. The cause was argued orally by *Fred. C. Winkler* for the appellants, and *L. S. Dixon* for the respondent.

For the appellants it was contended, that the Milwaukee river is a highway by water, and stands upon the same footing with highways by land. *Yates v. Judd*, 18 Wis., 118. Charter provisions imposing upon lots the burden of maintaining abutting highways have been sustained by this court in a series of decisions. *Weeks v. Milwaukee*, 10 Wis., 242; *Bond v. Kenosha*, 17 id., 284; *Hall v. Kenosha*, 29 id., 600; *Blount v. Janesville*, 31 id., 648. 2. Equity will not interfere to remove a cloud upon title until one exists. *Judd v. Town of Fox Lake*, 28 Wis., 583; *Milwaukee Iron Co. v. Hubbard*, 29 id., 52. These decisions sustained equitable interference upon the theory that there was a lien upon the land and a cloud upon the title, which, by the threatened proceedings, would ripen into an apparently perfect title, which could be shown imperfect only by matters *dehors* the record. But there is no cloud upon the

title shown here; only a threat to create a cloud. The bill discloses, " at most, a mere anticipated or threatened invasion of the legal rights of the plaintiff, which, if it ever should ripen into an injury to plaintiff, would not be irreparable, but might be redressed by the ordinary processes known to courts of law and equity." *Judd v. Town of Fox Lake*, 28 Wis., 587. 3. Plaintiff's lot is sought to be charged only with the actual cost of the work, and that is much less than the estimate. Equity will not interpose on the ground that the tax proceeding is irregular or void, unless it also appears to be inequitable and against conscience. *Stokes v. Knarr*, 11 Wis., 389; *Dean v. Gleason*, 16 id., 1. 4. Even if the assessment of benefits were essential to the validity of the proceedings, yet the benefit rests in the opinion and judgment of the board; and an appeal is provided from their decisions, and that is the exclusive remedy. *Leroy v. Mayor, etc.*, 20 Johns., 430; *Starr v. Rochester*, 6 Wend., 564; *Parks v. Boston*, 8 Pick., 218. Courts of equity do not sit to review the judgments of public officers upon matters of municipal concern, but leave the party aggrieved to his appropriate legal remedy. Dillon on Mun. Corp., § 737; *West v. Ballard*, 32 Wis., 172.

For the respondent it was argued, that, assuming the assessment to have been made upon a principle contemplated by the terms of the statute under which the board of public works acted, it is still unwarranted under sec. 3, art. XI of the constitution. See observations of PAINE, J., in *Weeks v. Milwaukee*, 10 Wis., 242. This constitutional provision ought not to be extended so as to authorize assessments of this character for dredging navigable rivers. Cooley's Con. Lim., 508; *Motz v. Detroit*, 18 Mich., 495; *St. John v. East St. Louis*, 50 Ill., 92. 2. The assessment was not made upon the principle enjoined by the statute under which the commissioners acted, and hence is void. The law required an assessment of benefits and damages to be made, and that each lot should be charged with only the amount of actual benefit to it. It is the duty

of the commissioners to examine the situation and condition of the several lots, and to exercise their judgment as to the benefits they will severally receive. There is no pretense that they made any such examination, or exercised any such judgment. The basis of the assessment was the estimated amount of dredging necessary to be done opposite each lot, and the only mental operation performed by the commissioners was, after ascertaining the cost at forty cents per cubic yard, to add twenty per cent. to that amount, and the aggregate amount they denominate the benefit which will accrue to the owner of the lot. See *State v. Hudson City*, 5 Dutch., 115; *State v. Newark*, 1 id., 399; *State v. Portage*, 12 Wis., 562. 3. The appeal provided for by the statute is given only where the lot owner " feels himself aggrieved by the decision of the board as to the amount of the benefits by them adjudged to accrue to him," etc. For irregularities and errors which render the proceedings null and void, no provision is made, and the right of a court of equity to interfere in such cases is complete. *State v. Portage, supra; Mitchell v. Milwaukee*, 18 Wis., 92. 4. Equity will interfere to *prevent* a cloud upon plaintiff's title, where his lands are threatened to be sold upon a void tax or assessment. *Mitchell v. Milwaukee*, 18 Wis., 97, citing *Dean v. Madison*, 9 id., 408. There is nothing in *Judd v. Town of Fox Lake*, 28 Wis., 583, opposed to this doctrine. The only point there decided was, that a mere resolution authorizing a certain sum to be collected for grading a street raised no such imminent danger of a cloud upon title as to call for the interposition of a court of equity. See also *Milwaukee Iron Co. v. Town of Hubbard*, 29 Wis., 51; *Crane v. City of Janesville*, 20 id., 305.

RYAN, C. J. *Weeks v. Milwaukee*, 10 Wis., 242, was decided as long ago as 1860; has been repeatedly followed and approved (*Bond v. Kenosha*, 17 Wis., 284; *Mitchell v. Milwaukee*, 18 id., 92; *May v. Holdridge*, 23 id., 93; *Dean v.*

*Charlton,* 27 id., 522; *Hale v. Kenosha,* 29 id., 599; *Blount v. Janesville,* 31 id., 648); and the rule which it upholds enters into most, if not all, of the city charters since granted by the legislature. The rule was adopted by the court with reluctance, in submission to the language of the constitution. But, whatever we might now think of the abstract justice or policy of the rule, it is altogether too late to reconsider it.

We are unable to perceive any difference in principle between the application of the rule to highways by land and to highways by water. It is, of course, true, as was said on the argument, that the latter are things of common right, open to the indiscriminate use of all; but that is equally true of the former. It is also true that the fee of highways by land goes generally with the fee of the property abutting upon them, which is not generally so in the case of highways by water. But the improvement of highways by land, with which the abutting property is chargeable, is not of the fee, but of the public use, and might well be detrimental to the enjoyment of the fee, ceasing the public use.

The rule appears to be applied to the improvement of public waters in *Soens v. Racine,* 10 Wis., 271, and *Bond v. Kenosha, supra.* In *Hale v. Kenosha, supra,* the court says: " Assessments, as distinguished from other kinds of taxation, are those special and local impositions upon property in the immediate vicinity of municipal improvements, such as grading and paving streets, improving harbors or navigable rivers within the limits of the municipality, and the like, which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived from the expenditure." And in *Holton v. Milwaukee,* 31 Wis., 27, the application of the rule to highways by water is very distinctly asserted. That was a case of land taken for the purpose of extending or widening a highway by water, and involved the assessment of damages and benefits by reason of

taking the land, and the separate assessment of benefits for the actual extension or widening of the highway. Speaking of the first of these assessments, DIXON, C. J., says: "In determining the compensation to be made for the land, the jury are first to ascertain and fix its value, and allow the same; and then to estimate or assess the benefits or damages, if any, to the remaining land or property of the plaintiff, which will result from the improvement when made. It may be that increasing the navigable capacity of the river, as proposed, will very greatly enhance the value of the adjoining property still owned by the plaintiff." And again, speaking of the second of these assessments: "It would seem to be an entire departure from and overthrow of the system, to hold that the assessment made, or to be made, against the owner in the latter proceeding as for a benefit, might be taken into account and credited or allowed in his favor as a damage in the former. The assessment in the latter as for benefits beyond any damages sustained, is a tax or public burden lawfully imposed on the individual. It is so in theory, as well as in fact, in both proceedings. It is difficult to perceive how a party can suffer that as a damage, which is lawfully imposed upon him or his property as a tax or public burden, in the sense that he may recover it back from or have it allowed to him by the public, in the same or any other proceeding. The benefits charged, or to be charged, to the plaintiff for dredging and actually widening the river, are but a tax." So that the application of the rule to highways by water does not appear to be an open question in this court.

The question whether the actual cost of improvement of highways by land or by water may be absolutely chargeable to abutting property beyond or irrespective of the actual benefit to the property, is not in this case. For the charter of the city of Milwaukee, as it stood when this case arose, and which must govern it, is clear and emphatic that the assessment shall not exeed the actual benefit to the property. The provisions

of the charter governing this case are to be found in ch. 401 of 1869 as amended by ch. 401 of 1870.*

Sec. 21 provides generally for the charge of street improvements on abutting lots. Sec. 22 makes similar provision charging the construction and repair of docks, and dredging rivers for fifty feet in width, upon abutting lots. Sec. 23 provides for an estimate of the cost of the improvement in either case, by the board of public works; and the subsequent process by which that board may acquire authority to order the

---

*Secs. 21 and 22 of ch. 401, P. & L. Laws of 1869, provide as follows:

"Sec. 21. The grading, graveling, planking, macadamizing, or paving to the center of any street or alley, and the grading, graveling, planking or paving of any sidewalk, and the paving of any gutter, shall be chargeable to and payable by the lots fronting or abutting upon such street, alley, sidewalk or gutter, not exceeding the amount to which such grading, graveling, macadamizing, planking or paving shall be adjudged by said board to benefit such lots.

"Sec. 22. The construction and keeping in repair of the docks in front of lots or parcels of land along the banks of the rivers in said city, and the dredging of the same to a width not exceeding fifty feet towards the center of the river, where such rivers have been dredged, shall be chargeable to and payable by the lots or parcels of land so fronting; and said board shall have the same authority over said rivers and lots or lands fronting thereon as they have over streets and lots and lands fronting thereon, and shall be governed by the same rules as in the case of improvement upon streets."

Sec. 23 of said chapter, as amended by sec. 3, ch. 401, P. & L. Laws of 1870, reads as follows:

"Whenever the board of public works shall deem it necessary to grade or otherwise improve any street, alley, sidewalk or public ground, or to dredge or dock any of the rivers, or to abate any nuisance, they shall cause to be made an estimate of the costs of such work, and shall put the same on file in their office, and such estimate shall be open to the inspection of any party interested. Thereupon the said board shall make to the common council such recommendation in relation to the proposed work as they may deem proper; and upon the same being adopted by the common council in whole or in part, the said board may order so much of the work to be done as shall have been adopted by the common council," etc.

Sec. 24 of said chapter, as amended by sec. 4, ch. 401, P. & L. Laws of 1870, reads as follows:

"Before ordering any such work to be done by the owners of lots or lands

Johnson vs. The City of Milwaukee and others.

improvement.   Sec. 24 qualifies and controls secs. 21 and 22, and provides that, before ordering any improvement in either case, the board shall view the premises, and consider the amount chargeable to abutting lots, and the benefit to the owners in consequence of the improvement; and that, in case the benefits shall be less than the cost, the balance of cost shall be paid out of the proper public fund.  This last provision clearly implies the necessity of a formal assessment of the actual benefits to each lot; for sec. 25 provides for public notice of the assessment of benefits so made, and for appeals

___

fronting on the same, said board shall view the premises and consider the amount proposed to be made chargeable against such several lots or pieces of land, and the benefit which in their opinion will actually accrue to the owners of the same in consequence of such improvement; and in case the benefits in their opinion amount to less than the cost of such improvement, the balance shall be paid out of the ward funds in the ward or wards in which such improvement is made, and the board shall indorse their decision in every such case on the estimate of the cost of such improvement, and file the same in their office."

Sec. 25 of said chapter, as amended by sec. 5, ch. 401, P. & L. Laws of 1870, reads as follows:

" Thereupon said board shall give notice for six days in the official city papers, to the owner or agent of any lot or parcel of land fronting upon any such improvement to be made, that an assessment of benefits for such improvement is ready for inspection in their office, and requiring him to do the work mentioned in such notice, within a reasonable time therein to be specified, and if such work shall not be done within such time, the said board shall contract for the doing of the same, as hereinbefore provided, and no further notice or publication of such assessment shall be necessary.  The owner of any lot or tract of land who feels himself aggrieved by the decision of the said board, as to the amounts of the benefits by them adjudged to accrue to him by reason of any improvement charged against his lot or parcel of land, may, within thirty days after the expiration of the notice of such work being ordered, by petition appeal to the common council, who shall hear and determine such appeal as they may deem just and proper.  Should such appellant be dissatisfied with the decision of the common council, upon his appeal, or should such council fail to decide upon his appeal for twenty days after the petition therefor shall have been presented to them, said appellant may, within thirty days after the making of such decision, or after the expiration of said twenty days, appeal to the circuit court of Milwaukee county," etc.

therefrom by the owner of each lot to the common council, and from the common council to the circuit court.

These provisions appear to be equitable, and go far to avoid the objections to the justice of the system recognized in *Weeks v. Milwaukee*, and which made the court so reluctant to uphold it. For, as the charter of the city then stood, while the benefits could not exceed the actual cost, the assessment could not exceed the actual benefits: benefits positively and specially found to accrue to each lot assessed. The charter did not provide that abutting property should bear the whole cost of improvements; but that it should bear the cost to the extent only to which it was actually benefited; leaving the deficiency, when there should be one, to be paid out of the appropriate public fund arising from general and equal taxation. The theory that the cost of improvement, and the benefit to property, must always and necessarily be equal, is wholly unwarranted by the provisions which we have cited. And an arbitrary assessment of actual cost as benefits, without fair estimate, upon actual view, of the actual benefit accruing to each lot, would be a fraud upon the just rule established by the sections which we have cited.

Whether, and how far, the present uses of property should be considered in assessing benefits under these provisions, might be a question of some difficulty, not necessary to determine here. We rest our decision, not upon the rule of assessment, but upon the necessity of assessment, fairly and actually made, upon actual view of the premises to be assessed, of the benefits actually accruing to the premises by the improvement. This must have rested in the first instance upon the judgment and conscience of the commissioners of public works, which we could not probably have reviewed; that would have been for the common council firstly, and for the circuit court secondly. But we can require the apparent exercise of such judgment and conscience, in an apparently fair and just assessment, made under the conditions of the statute, by the

board of public works, as a condition precedent to a valid charge upon the property assessed for the improvement. And where it is apparent that there was none such, it is our duty to hold invalid the attempt to charge the property liable to assessment.

The document in the record, purporting to be the assessment of the board of public works, is open upon its face to grave suspicion that it was an evasion of the statute under which it was made. The commissioners do not certify that they have made the assessment of benefits, as required by the statute; but only that the schedule annexed sets forth the benefits. The schedule of benefits itself appears to be arbitrary throughout, and sometimes greatly unequal. For example: the south twenty feet of lot two, and the north twenty feet of lot three, in block three, are respectively assessed $54.72 and $35.04; lots two and three in block thirty-one, apparently contiguous and of equal frontage, are respectively assessed $182.40 and $222.24; and the north and south halves of lot five in the same block are respectively assessed $116.64 and $145.44. It would be very difficult to believe that contiguous property, used for like purposes, could be so unequally benefited by the improvement; or that the assessment proceeded upon an actual and fair estimate of actual benefits to each lot, without regard to cost except as a limit of the benefits chargeable. The whole tends to raise a strong presumption that no estimate of actual benefits was made, and that it is really an estimate founded upon cost and not upon benefits.

And this presumption is fully sustained by the evidence of one of the commissioners examined on the trial. It appears that the city engineer had made an estimate of the cost of dredging in front of each lot. To this the board of public works added twenty per cent., " to cover the amount which the board deemed the several lots benefited in excess of the nominal estimate or cost of the work, which was a mere guess at the cost." If the estimate of cost were a guess, the estimate

of benefits calculated upon it, at a uniform and arbitrary rate of increase, would appear to be one guess founded upon another. A competent engineer's estimate of cost could not properly be called a guess; but an estimate of benefits, made simply and solely by adding a percentage to it, is little better. It sufficiently appears by the evidence of this witness, that the apparent assessment of benefits rested absolutely on the estimate of cost, and not at all upon an actual consideration or estimate of actual benefits. And so the witness testifies that the assessment of benefits was "coincident with the theory that each piece of property, unless in some extraordinary case, shall pay the cost of the work in front of the lot." And he adds that the estimate was made to cover cost and nothing more, to this extent, "that the board deemed the property benefited by dredging, as contemplated by the law, to the amount of the cost of the dredging at least." The witness and his board appear not to have understood the law as we do. And it is in vain that he asserts that there was a fair assessment of actual benefits, while he gives a process of assessment inconsistent with his assertion and with the letter and spirit of the law under which the board was acting. That is but his conclusion from the facts which he states, and is not warranted. The board of public works presumably acted upon the misconstruction of the statute which the witness repeats; and their assessment was an evasion and abuse of the just rule prescribed by it.

We do not mean to be understood that, under the charter of the city as it then was and we believe still is, the full cost of improvement cannot be assessed against property, when the benefit is equal to the cost. That may well happen. What we do mean to hold is, that it is the amount of the benefit, not exceeding the cost, and not the amount of the cost, exceeding the benefit, with which property is chargeable in these assessments.

It does not appear that the board of public works ever

viewed the premises assessed, as required by the statute. The formal assessment does not profess that they did; and the evidence of the commissioner seems to imply that they did not. This alone might be fatal to the assessment. *Hersey v. Supervisors*, 37 Wis., 75. But we prefer to rest the invalidity of the assessment, in this case, upon the ground that the commissioners of public works based the assessment upon cost, instead of the actual benefits positively and specially accruing to the property assessed, in consequence of the improvement.

Cases involving these assessments under the charter of the city have been frequently in this court; none of them, we think, involving the precise question here determined, or in conflict with our judgment of this case. There are certainly *dicta* in some of them indicating that the cost is the measure of the assessment; but we believe that all such *dicta* were before the statute of 1869. Be that as it may, when the construction of that statute is directly involved, we are quite clear that it is impossible to put any other upon its provisions.

Some objection was made to the right of the respondent to maintain this action, on the ground that the assessment is not a cloud upon his title. We are unable to agree with the learned counsel, and cannot think that the cases which he cites supports his position. The assessment has been made, the work has been done, and the city is about to issue a certificate to the contractor charging the respondent's lot, to go into the tax roll if unpaid. Whenever the lien might be held to attach, it appears to us that the facts constitute a cloud upon the plaintiff's title, which a court of equity will remove, within the doctrine of *Judd v. Fox Lake*, 28 Wis., 583. No prudent purchaser would take the property at its full value, in view " of the impending, unauthorized execution and delivery " of the certificate, which would operate as an apparent charge or encumbrance on it. Upon the mere assessment, as

an initial step or threat, before the work had been done and a certificate apparently become due to the contractor, equity would not interfere. But, when the work has been done under " an apparently valid contract entered into by the officers of the corporation, but which is in reality invalid by reason of some extrinsic defect," we do not appreciate the difference in principle between arresting the impending certificate, which is to found a sale, and arresting the sale itself. The certificate charging the property is negotiable; an additional reason for arresting what might prove a vagrant charge upon the property, difficult to find or to deal with.

*By the Court.* — The judgment of the court below is affirmed.