Hayes vs. Douglas County and others.

HAYES, Appellant, vs. DOUGLAS COUNTY and others, Respondents.

HAYES, Respondent, vs. DOUGLAS COUNTY and another, Appellants.

*October 2, 1895 — March 10, 1896.*

*Taxation: Equity: Superior city charter: Powers of council: Levy for "general fund:" Street improvements: Assessment of benefits: Limitations: Constitutional law: Appeal from assessment: Exclusive remedy: Costs: Limiting amount.*

1. The city charter of Superior provides (sec. 102, ch. 124, Laws of 1891) that the board of public works shall file "a detailed statement of the amount of money that will be required for the ensuing fiscal year in their departments, and the city comptroller shall likewise file a statement of the amount required by the police department, fire department, and the remainder of the general fund;" that the clerk shall "place such estimates before the city council for their consideration, and the council shall thereupon, by resolution, levy such sums of money as may be sufficient for the several purposes for which taxes are authorized, not exceeding the limit provided by law." In other sections the charter speaks of payments to be made out of the "general fund." Sec. 112 provides that the directions given for levying and collecting taxes shall be deemed directory only, and that no error or informality in the proceedings, not affecting the substantial justice of the tax, shall in any wise affect its validity. Under such provisions *it would seem* that the estimates mentioned are designed merely as aids to the judgment of the council, not as limitations on its power, and that the levy of a certain sum for the "general fund" is not invalid merely because it was not included in the estimates filed and there was no detailed statement of the items of which it was composed.

2. Even if such a levy is void, still, unless the tax is excessive or unequal and unjust, a court of equity will not interfere to set aside a sale based on that and other taxes, without payment of that tax as a condition of relief.

3. Where, by a city charter, the cost of street improvements is chargeable to the lots or parcels of land to be assessed, "in proportion to the benefits secured thereby," an assessment according to the

frontage of each lot on the street improved is void, unless it affirm-
atively appears that it was made upon an actual view of the prop-
erty and a consideration of the benefits actually accruing to each
parcel,— even where the charter constitutes the property fronting
upon the improvement as the assessment district.

4. Where the cost of street improvements is chargeable to the lots and
parcels of land benefited thereby, an assessment upon the property
fronting the improvement only, with nothing to show that the
proper officers determined, in the exercise of their judgment, that
no other property was benefited, is presumed to be unequal and
unjust, and payment by a property owner of his proportion of the
assessment is not a condition precedent to his obtaining equitable
relief against the assessment.

5. A statute by which the right to contest the validity of special as-
sessments for street improvements is barred as soon as improve-
ment bonds are issued, which may be within forty days after the
assessment of benefits is completed, without actual notice to land-
owners, and before work on the improvement is actually begun,
is invalid.

6. An appeal given by a city charter from an assessment of benefits,
upon which the only remedy given to the appellant, if successful,
is that the difference between the amount assessed and the amount
adjudged to be paid as benefits shall be paid by the city, does not
preclude an action to set aside an unequal and void assessment,
even though the charter provides that said appeal shall be the
only remedy of the landowner "for the redress of any grievance
he may have by reason of the making of such improvement."

7. A county tax to pay the expense of placing stones from the county
in the state building at the Columbian World's Fair is unauthor-
ized and void.

8. If, in an equitable action, the court awards costs to a party, it can-
not limit the amount thereof.

Appeals from a judgment of the circuit court for Douglas
county: R. D. Marshall, Circuit Judge. *Reversed.*

This is an action to set aside certain taxes and assess-
ments, and a tax sale and tax certificate in which the taxes
and assessments resulted. The tax certificate is upon eighty
acres of unplatted land in the city of Superior, owned by
the plaintiff, and described as the E. ½ of the N. E. ¼ of sec-
tion No. 23, in township No. 49 N., of range No. 14 W. In

the year 1892 this tract of land was sold by the treasurer of *Douglas* county, for taxes and assessments which were delinquent upon the tax roll for the city of Superior for 1891, amounting to $9,500.14. The common council of the city of Superior, by an ordinance of November 4, 1891, levied a city tax of $249,000 upon the taxable property of the city. This levy was based in part upon estimates furnished by the board of public works and the city comptroller, and included a general item of $61,000, designated as "general fund," without further specification of the particular purpose or purposes for which it was levied or items of which it was composed, and was not included in the estimates so furnished. This item of the general city tax was held by the circuit court to be unauthorized by the city charter and illegal. The portion of this general tax which was carried out against the plaintiff's land, and included in the sum for which it was sold, was found to be $421. This sale also included a county tax of $100 to pay the expense of placing some blocks of Douglas county stone in the Wisconsin Building at the Columbian World's Fair. This item was also held to be unauthorized and illegal. It was found that, of this item, fifty-two cents were carried out and charged to the plaintiff's lands. There was also included in the sum so carried out and charged against the plaintiff's land the sum of $4,581.32, the sum of several assessments for street improvements, and instalments of certain improvement bonds which had been issued to pay for other street improvements. These were an instalment of the Belknap avenue improvement bonds, $1,972.10; one instalment of Grand avenue improvement bonds, $125; assessment for grading Hill avenue, $1,438.62; for grading Ritchie avenue, $777.96; for grading Belknap avenue, $267. Of these items, those for the Grand avenue improvement and for the grading of Belknap avenue were incurred under the city charter of 1889; the others, under the charter of 1891. Under the former charter, street improvements were

"chargeable to the lots or parcels of land fronting or abut-
ting upon such street or alley, in proportion to the benefits
accruing to such lots or parcels of real estate by reason of
such improvement." Laws of 1889, ch. 152, sec. 143. Under
the latter they were "chargeable to the lots or parcels of land
benefited thereby, in proportion to the benefits secured
thereto." Laws of 1891, ch. 124, sec. 117. In neither case
are the benefits assessed to exceed the benefit actually accru-
ing to each tract or parcel by such improvement.

The plaintiff's lands are bounded on the north by Belknap
avenue, on the east by Hill avenue, on the south by Ritchie
avenue, on the west by an unplatted eighty-acre tract, owned
by the Land & River Improvement Company. It nowhere
abuts upon or touches Grand avenue. In the year 1890
the city of Superior graded Grand avenue. This avenue
runs diagonally across section 23. But it nowhere touches
plaintiff's land, although it runs across a corner of the N. E. $\frac{1}{4}$
of the section. Benefits are assessed against the entire
N. E. $\frac{1}{4}$ by that description. An improvement bond, cover-
ing the entire quarter section, was issued and sold. The
sum of $125.64 is included in the tax included in the tax roll
of 1891, carried out against the plaintiff's land to pay the
part of one instalment on the improvement bond which the
city clerk estimated to be the share appropriate to plaintiff's
land. It is claimed that as to this assessment the action is
barred because not begun before the issuing of the improve-
ment bond, under a provision of the charter (sec. 137). This
assessment the circuit court held invalid, on the ground that
plaintiff's land, having no frontage upon the improvement,
was not liable to assessment.

In the year 1891 the city paved Belknap avenue, and as-
sessed the whole cost of the improvement upon the lands
fronting and abutting upon the avenue. The sum of $7,585.26
was assessed against the north forty acres of the plaintiff's
tract of land, and there was no assessment against the south

forty acres. An improvement bond upon the north forty was issued and sold to raise money to pay for the improvement. The sum of $1,972.20, intended as one instalment of such improvement bond, is included in the sum for which the plaintiff's eighty acres were sold. It is also pleaded that the action is barred by sec. 137 of the charter, because not begun before the issuing of the improvement bond. The circuit court held this item good as a special assessment, though void as a bond against the city because in excess of the constitutional limit to municipal indebtedness. In the same year Hill avenue was graded. For this improvement benefits were assessed, as in the other cases, to the owners of property fronting on the improvement, by the front foot. The amount assessed to the plaintiff's land as benefits of this improvement was $1,438.67. The same year Ritchie avenue was graded. For benefits of this improvement, there was assessed against the plaintiff's land $777.96.

The circuit court found that in each case the benefits were assessed upon the basis of frontage; that the amount assessed per front foot was determined by dividing the entire cost of the improvement by the number of feet frontage on both sides of that part of the street to be improved; that the rate of the assessment was uniform and equal; that the total amount of the sums assessed was equal to the actual total cost of the improvement; that before making such assessments of benefits, in each case, the board of public works "actually viewed the premises as required by the charter;" that there is no evidence that the board of public works did not use its best judgment in respect to such improvements; that in each case the notices given were directed only to the owners of property abutting upon the proposed improved part of the street. It is not certified, either by the board of public works or by the common council, nor found by the court, that the assessment by the frontage rule alone is in proportion to the benefits conferred by the improvements, nor that

the assessment of benefits was made upon actual view and
consideration of benefits to be conferred, nor, in any case,
upon all the property benefited by the improvement; while,
on the other hand, it is claimed for the plaintiff that the evi-
dence shows that these assessments were made without an
actual view or assessment, but were made with paper and
pencil only, in the city engineer's office, by the front-foot
rule, and were not made on the basis of actual benefits re-
ceived, but on the theory that all abutting property was
benefited equally, while, in truth, some parcels were more
benefited than others of the same frontage.    There was in-
cluded in the certificate an excess of interest amounting to
$41.18.

The circuit court adjudged that the sale and certificate be
set aside, upon the condition that the plaintiff pay all of the
taxes included in the certificate except $421, the general
fund tax; the World's Fair stone tax, $0.52; The Grand
avenue grading bond tax, $125.64; and the excessive inter-
est included in the certificate, $41.18,— leaving the amount
to be paid $8,911.80, with costs to the plaintiff; costs, above
disbursements, not to exceed $30.    Both parties appeal,—
the plaintiff from those parts of the judgment which require
him to pay the amount of the assessments, and that which
limits the amount of the costs to be recovered by him; and
the defendants from that part of the judgment which ex-
empts the plaintiff from the payment of the sums named.

For the plaintiff there were briefs by *Spooner, Sanborn,*
*Kerr & Spooner,* and oral argument by *A. L. Sanborn.*    They
argued, among other things, that the city has no power,
under its charter, to levy taxes except for definite objects.
Every tax must be specifically authorized by statute, and
the authority to levy can be exercised no further than it is
clearly given.    *Freeland v. Hastings,* 10 Allen, 570; *Oconto*
*Co. v. Jerrard,* 46 Wis. 317, 327; *Milwaukee & St. P. R.*
*Co. v. Kossuth Co.* 41 Iowa, 57.    The tax-payer has a right

to know whether the money is to be raised for a legal purpose, or for one altogether illegal and beyond the scope of the taxing power. The levy must show on its face that the money is to be raised and applied to some lawful object or purpose. *State v. Saalmann,* 37 N. J. Law, 156; *State v. Sickles,* 24 id. 125; *State v. Sullivan,* 36 id. 91; *State ex rel. Duryee v. Angle,* 34 id. 441; *State v. Palmar,* 39 id. 250; *Railroad Co. v. Kentucky,* 89 Ky. 531. The World's Fair tax is void, and the rule *de minimis* does not apply. *Barden v. Columbia Co.* 33 Wis. 445; *Baker v. Columbia Co.* 39 id. 444; *Milledge v. Coleman,* 47 id. 184; *Case v. Dean,* 16 Mich. 32; *Burroughs v. Goff,* 64 Mich. 464; *Detroit v. Blackeby,* 21 id. 84, 114; *Bayle v. New Orleans,* 23 Fed. Rep. 843; *New London v. Brainard,* 22 Conn. 552; *Law v. People ex rel. Huck,* 87 Ill. 387. This court has uniformly held, as a matter of public policy, a strict rule in respect to special assessments; and this is the general rule. *Liebermann v. Milwaukee,* 89 Wis. 336, 346; *Mitchell v. Milwaukee,* 18 id. 92; *Kneeland v. Milwaukee,* id. 411; *Myrick v. La Crosse,* 17 id. 442; *Wells v. Burnham,* 20 id. 112; *Pound v. Chippewa Co.* 43 id. 63; *Hall v. Chippewa Falls,* 47 id. 267; *Dean v. Borchsenius,* 30 id. 237; *Gilman v. Milwaukee,* 61 id. 588; *State ex rel. Moore v. Ashland,* 88 id. 599; *Beaser v. Ashland,* 89 id. 28; *Dieckmann v. Sheboygan Co.* 89 id. 570. It was the duty of the board of public works, under the charter of 1891, to assess all property benefited by an improvement, and not merely the abutting property. The plaintiff and all other persons assessed for special benefits were entitled to have notice given to all persons whose lands might be afterwards included in the assessment district, so that they might appear before the board, if they wished to do so. It may be that the board, upon a proper notice to the owners of lands benefited, might decide that only the lands fronting upon the part proposed to be improved were actually benefited. But it seems clear that they could not do

this in advance of notice and hearing. *Weller v. St. Paul,* 5 Minn. 95; *Diggins v. Brown,* 76 Cal. 318; *Davis v. Litchfield,* 145 Ill. 313; *State ex rel. Stees v. Otis,* 53 Minn. 318; *Mock v. Muncie,* 9 Ind. App. 536; *Kelly v. Chicago,* 148 Ill. 90; *Cincinnati v. Batsche,* 40 N. E. Rep. 21; *Lipes v. Hand,* 104 Ind. 503; *Coggeshall v. Des Moines,* 78 Iowa, 235. The statute requires not only that the lands benefited shall be assessed, but that the board shall view the premises. It is perfectly plain, from the face of the report, that the proceedings of the board are in violation of the charter. *Johnson v. Milwaukee,* 40 Wis. 315, 324; *Watkins v. Zwietusch,* 47 id. 513, 515; *Watkins v. Milwaukee,* 52 id. 98. Of course the board must act as a body, and not proceed from the map or their general recollection of the premises, individually gained. It is a deliberative body, and it must act together. *Paradise Road,* 29 Pa. St. 20; *McClellan v. Co. Comm'rs,* 21 Me. 390.; *Ex parte Rogers,* 7 Cow. 529; *State v. Coleman,* 13 N. J. Law, 99. The action of the board in assessing damages and benefits for improvements is judicial in its nature. *State v. Crane,* 36 N. J. Law, 394; Cooley, Taxation, 648. The statute requires that property be assessed according to benefits. The assessments, in fact, were made by the frontage rule. And there is no finding that the special benefits are in proportion to the frontage. No judgment or determination whatever is expressed in the reports that the property is benefited in that proportion. Such assessments are absolutely *void. Watkins v. Zwietusch,* 47 Wis. 513; *State v. Hudson,* 29 N. J. Law, 104; *State v. Jersey City,* 38 id. 410; *Springfield v. Sale,* 127 Ill. 359; *Chicago v. Baer,* 41 id. 306; *Chicago v. Larned,* 34 id. 203; *State ex rel. Cunningham v. District Court,* 29 Minn. 62; *Warren v. Grand Haven,* 30 Mich. 24; Cooley, Taxation (2d ed.), 648; *Chamberlain v. Cleveland,* 34 Ohio St. 551, 566, 567; *State v. Comm'rs of Streets & Sewers,* 38 N. J. Law, 195. The report of the commissioners cannot be aided by intendment, nor by pre-

sumptions. *State v. Jersey City*, 38 N. J. Law, 412; *Lieber-mann v. Milwaukee*, 89 Wis. 346; *Clapp v. Hartford*, 35 Conn. 66; *Seely v. Pittsburgh*, 82 Pa. St. 360, 365; *Binga-man v. Pittsburgh*, 147 id. 353; *Traver's Appeal*, 152 id. 129. Under the charter of 1889 (Laws of 1889, ch. 152, sec. 149) the common council was required to determine the amount to be paid by the abutting real estate as benefits and the amount that should be paid by the city at large. This pro-vision has been absolutely disregarded in all these street assessments. This duty on the part of the council or board of public works is one that cannot be shirked or escaped, and the tax-payer is entitled not only to have it considered but to notice and a hearing. It is a vital and important question in the assessment of benefits. *Trustees of Griswold College v. Davenport*, 65 Iowa, 633, 636; *Sewall v. St. Paul*, 20 Minn. 511; *Murdock v. Cincinnati*, 39 Fed. Rep. 891; *Auer v. Dubuque*, 65 Iowa, 650; *Seifert v. Brooks*, 34 Wis. 443; *State ex rel. Flint v. Fond du Lac*, 42 Wis. 287; *State v. Langer*, 29 id. 68; *Kundinger v. Saginaw*, 59 Mich. 355. The appeal given by the charter is not the exclusive rem-edy. *Pier v. Fond du Lac*, 38 Wis. 470, 478; *Johnson v. Milwaukee*, 40 id. 315; *Watkins v. Zwietusch*, 47 id. 513; *Watkins v. Milwaukee*, 52 id. 98; *Teegarden v. Racine*, 56 id. 545; *Harrison v. Milwaukee*, 49 id. 247, 253; *Hixon v. Oneida Co.* 82 id. 529. The provision of the charter that notice shall be given that at the end of thirty days improve-ment bonds will be issued, and that upon their issue no question shall be raised as to the regularity of the proceed-ing, as a limitation, is so unreasonable as to be utterly void. A reasonable time must be given. *Howell v. Howell*, 15 Wis. 55; *Terry v. Anderson*, 95 U. S. 628; *Hughes v. Fond du Lac*, 73 Wis. 380; *Pereles v. Watertown*, 6 Biss. 79; *Mc-Gahey v. Virginia*, 135 U. S. 662; *Hart v. Bostwick*, 14 Fla. 162. See, also, *Baker v. Columbia Co.* 39 Wis. 448; *Smith v. Sherry*, 54 id. 114; *Sherry v. Gilmore*, 58 id. 324; *Eaton*

*v. Manitowoc Co.* 40 id. 668; *Hyde v. Kenosha Co.* 43 id. 129; *Smith v. Morrison,* 22 Pick. 430; *De Moss v. Newton,* 31 Ind. 219; *Smith v. Cleveland,* 17 Wis. 556, 566.

*H. H. Grace* and *H. C. Sloan,* for the defendant *Douglas County.*

For the defendants there were briefs by *Ross, Dwyer & Hanitch,* and oral argument by *Louis Hanitch.*

The following opinion was filed December 17, 1895:

NEWMAN, J.    The point made against the general tax is not, indeed, that it was not authorized to be levied at all, but that it was not authorized to be levied in the manner in which it was levied, nor unless the item criticised — that is, the item " $61,000, general fund "— should be included, with a detailed statement of the items which enter into it, in the general statements required to be made and filed by the board of public works and by the city comptroller. It is urged that this detailed statement is a necessary prerequisite to a valid levy of the city's taxes.

The statute which authorizes the levy of the city's taxes, and which directs the manner of this levy, is sec. 102 of the city charter, which is ch. 124, Laws of 1891.   The section reads as follows:

" On or before the first day of October in each year, the board of public works shall file with the city clerk a detailed statement of the amount of money that will be required for the ensuing fiscal year in their departments, and the city comptroller shall likewise file a statement of the amount required by the police department, fire department, and the remainder of the general fund, and for the purpose of paying interest for the ensuing year on the public debt and five per cent. of the principal thereof.   The city clerk shall, not later than the second Tuesday of October, place such estimates before the city council for their consideration, and the council shall thereupon, by resolution, levy such sums

of money as may be sufficient for the several purposes for which taxes are authorized, not exceeding the limit provided by law, and in making such levy they shall take into consideration the estimated amount that will be received by the city during the fiscal year from licenses."

This section evidently contemplates that a fund shall be raised in the nature of a general fund, and which it will not be a misnomer to call the "general fund," for it speaks of the "remainder of the general fund." And in other sections the charter speaks of payments to be made out of the "general fund." Secs. 118, 125. The section seems to contemplate that at least the amounts required by the police department and fire department are parts of the fund denominated the "general fund," for they are coupled by the conjunction "and" with "the remainder of the general fund." There are other purposes for which taxes may be lawfully levied which would seem appropriately to come within the designation of "general fund." Such are moneys for the payment of salaries to city officers, the expenses of the health department, of city hospitals, of lighting and cleaning streets, of caring for the sewers, and many other like purposes. But it was contemplated that the city comptroller should make and file an estimate of the entire amount of moneys needed to be levied for such general fund. The charter only requires the statement to specify the amount required. It is not, in terms at least, required to specify in detail. Nor is it, in terms at least, required that the common council specify in detail the items which go to make up the sum which it levies. Nor is it, in terms, limited by the amount estimated by the comptroller. But it is directed to "levy such sums of money as may be sufficient for the several purposes for which taxes are authorized," up to the limit provided by law. This seems to confide to the judgment and discretion of the common council to levy such sums as, in its judgment, are sufficient for all the several

purposes for which taxes may be raised, uncontrolled by the estimates of the board of public works and the city comptroller. It would seem that the statements of these officers are designed for aids to the judgment of the common council, rather than for limitations upon its power.

This view seems to be re-enforced by sec. 112 of the charter, which provides: "The directions hereby given for the assessing of lands and personal property, and levying and collecting taxes, shall be deemed directory only, and no error or informality in the proceedings of any of the officers entrusted with the same, not affecting the substantial justice of the tax, shall vitiate or in any wise affect the validity of such tax or assessment."

It does not appear that a larger sum or sums were levied than were sufficient for the several purposes for which taxes were authorized, nor that any error or informality intervened affecting the substantial justice of the tax; and while it is realized that there are too few safeguards around this power of levying municipal taxes, and that it is a power liable to be abused, and which, very likely, is often abused, no doubt it is a subject difficult of adequate regulation. This regulation is within the province of the legislature, not within that of the court. The court can only enforce the law as it is written by the legislature. And, even if the court should be of opinion that the manner of the levy of this particular tax was so irregular as to render the levy void, still, unless it shall also appear that the tax is excessive or unequal and unjust, so as to affect its substantial justice, a court of equity will not interfere to declare it invalid or to restrain its collection, without payment of the tax. *Fifield v. Marinette Co.* 62 Wis. 532; *Wis. Cent. R. Co. v. Ashland Co.* 81 Wis. 1. So no ground is apparent on which the plaintiff can be relieved from the payment of this tax as a condition of the relief which he seeks.

The special assessments for street improvements were all

made in the same manner, and all have a common vice. Both charters under which they were respectively made provide that the improvements shall be chargeable to the lots or parcels to be assessed, "in proportion to the benefits secured thereto." All of these assessments were made by the frontage rule. In each case the whole amount of benefits to be assessed for the entire improvement was divided by the number of feet fronting on the improvement. This found the benefit accruing to each separate front foot fronting on the improvement. The benefit to each front foot, so found, multiplied by the number of front feet in each parcel, produced the benefit which was assessed against such parcel. This so-called assessment was made in the office of the city engineer, and without actual view and consideration, by the board of public works, of the benefits actually accruing to each parcel by reason of the improvement.

It is fundamental that the assessment of benefits shall be made by the rule of apportionment prescribed by the charter; and where the rule of actual benefits is the rule prescribed, as in these charters, such benefits can be assessed only upon an actual view of all the property in the assessment district, and an impartial comparison and estimation of the benefits actually accruing to each parcel from the improvement; and it must be made to appear affirmatively that the assessment has been made in substantial compliance with the authority given by the charter. *Johnson v. Milwaukee*, 40 Wis. 315; *Watkins v. Zwietusch*, 47 Wis. 513; *Liebermann v. Milwaukee*, 89 Wis. 336, and cases cited on page 346; *Springfield v. Sale*, 127 Ill. 359.

In *Johnson v. Milwaukee* the court say: "We rest our decision, not upon the rule of assessment, but upon the necessity of assessment, fairly and actually made, upon actual view of the premises to be assessed, of the benefits actually accruing to the premises by the improvement. This must have rested, in the first instance, upon the judgment and

conscience of the commissioners of public works, which we could not probably have reviewed; that would have been for the common council firstly, and for the circuit court secondly. But we can require the apparent exercise of such judgment and conscience, in an apparently fair and just assessment, made under the conditions of the statute, by the board of public works, as a condition precedent to a valid charge upon the property assessed for the improvement. And where it is apparent that there was none such, it is our duty to hold invalid the attempt to charge the property liable to assessment."

In *Liebermann v. Milwaukee* the court say: "The assessment must show upon its face that the board has considered and passed upon all questions made material by the statute, and the results at which they have arrived. That which the law regards as of the substance of the proceeding we cannot treat as immaterial, nor can presumptions supply its place. We must therefore hold that the assessment in question is void on its face, for a failure to show affirmatively that it was made in conformity with the authority conferred upon the board of public works by the provisions of the charter referred to."

When it is required that the assessment shall be according to benefits accruing to each parcel, an assessment by the frontage rule does not show affirmatively a compliance with the statute. While such an assessment is not necessarily erroneous, it is presumed to be so, unless the return shows that the board has considered that matter and finds that the benefits are in the proportion of the frontage of each parcel. *State v. Hudson*, 29 N. J. Law, 104; *State v. Jersey City*, 38 N. J. Law, 410; *O'Reilley v. Kingston*, 114 N. Y. 439; *Springfield v. Sale*, 127 Ill. 359.

It is evident that these assessments each fail to show upon their face that the statute which authorized them was complied with. Hence they must be held to be void.

The plaintiff's land was not liable, at all, to assessment for the Grand avenue improvement. It did not front or abut on that improvement, and so, under the charter of 1889, was not in the assessment district.

The assessments for paving Belknap avenue, and for the grading of Hill and Ritchie avenues, were made after the enactment of the charter of 1891. The former charter had constituted the frontage upon the improvement as the district upon which benefits were to be assessed. The new charter formed no assessment district, but declared the cost of the improvement to be "chargeable to the lots and parcels of land benefited thereby." The purpose of this change is manifest. It is fair and just that each parcel of property benefited by the improvement shall bear its proportionate share of the burden. It is matter of common knowledge that property lying in the vicinity of such improvements often derives important benefits from them, although not fronting upon or directly contiguous to them. There necessarily devolved upon the board of public works the duty to ascertain and determine what parcels of land were or would be benefited by the improvement,— in effect, to determine the assessment district. It was the duty of that board to include within the limits of the assessment district all parcels of land which in its judgment, fairly exercised, would be benefited.

In the case of these last-named assessments, the board of public works entirely disregarded this provision of the new charter, and levied the assessments, as theretofore, upon the property fronting the improvement only; and it in no way appears that the board considered the matter, or determined, in the exercise of its judgment, that no other property would be benefited. So wide a departure from the rule of the statute cannot be without important effect upon the validity of the assessment. An assessment, under this statute, which does not distribute the burden fairly upon all

the property benefited by the improvement, cannot be just
and equal. While mere errors of judgment do not invali-
date it, it must appear to be a fair attempt at compliance
with the statute. As suggested by RYAN, C. J., in *Johnson
v. Milwaukee*, 40 Wis. 315, the court may and should re-
quire an apparent exercise of the judgment and conscience
of the board of public works, in an apparently fair and just
assessment, in conformity with the directions of the statute.
An intentional omission from the assessment of property
benefited must necessarily make the assessment unequal and
unjust. *Weeks v. Milwaukee*, 10 Wis. 242, 264. These as-
sessments were made in entire disregard of the statute, and
are presumed to be unequal, and that the inequality is suf-
ficient to justify the interference of a court of equity. *Has-
san v. Rochester*, 67 N. Y. 528, 536, 537; *In re New York
Protestant Episcopal Public School*, 75 N. Y. 324. And be-
cause the defects go to the very foundation of the assess-
ment and make it necessarily unequal, the plaintiff is not
required to pay his proportion of the assessment as a condi-
tion of relief. *Hassan v. Rochester, supra; Marsh v. Clark
Co.* 42 Wis. 502; *Meggett v. Eau Claire*, 81 Wis. 326.

In the cases of the Belknap avenue improvement and the
grading of Grand avenue, the common council issued and
sold improvement bonds upon the assessments. This it is
authorized by the charter (secs. 131, 132) to do as soon as
the amount of benefits chargeable to the real estate has
been "finally determined" and the contract for doing the
work has been let, after giving thirty days' notice, by pub-
lication in a newspaper, of its intention to issue such bonds;
and to collect it from the property assessed, by instalments,
as special taxes (sec. 136). The charter (sec. 137) also pro-
vides that "no action shall be maintained to avoid any
of the special assessments of [or?] taxes levied pursuant to
the same," after such improvement bonds have been issued;
and that "said bonds shall be conclusive proof of the regu-

larity of all proceedings upon which the same are based."
The right to question the validity of these assessments and
bonds in this action is denied, upon the authority of these
provisions of the charter. So the question is presented
whether the right of the owner to contest the validity of
these assessments can be lawfully taken away by so short a
limitation, by a statute which provides for no actual notice.

The assessments of benefits must be finally complete be-
fore the contract for doing the work can be let. 'Sec. 127.
The contract may be let after publication of notice for bids
for one week. After the contract has been let, the im-
provement bonds may be issued after thirty days' notice by
publication in a newspaper. No actual notice is provided
for, and the bonds may be issued before the work has com-
menced. So that, if the statute is sustained as a valid lim-
itation, its bar may be complete within forty days after the
assessment is finally determined, and regardless of the fact
whether the owner has acquired actual knowledge of the
proceedings against his property.

These are proceedings whereby property is to be taken
*in invitum.* No man's property can be lawfully taken or
taxed but by due and regular process of law; nor forfeited
except by his own omission seasonably to assert his right.
It has been already demonstrated that these assessment pro-
ceedings are not due process of law, and are invalid to de-
prive the plaintiff of his property. So the plaintiff's prop-
erty has not been effectually taken by these proceedings,
unless the plaintiff has debarred himself from contesting the
validity of the proceedings by his own laches; and this de-
pends upon the validity of this statute as a statute of lim-
itations.

All statutes of limitation proceed upon the theory that
the party has forfeited his right to assert his title in the law
by lapse of time and omission to assert it. This necessarily
presupposes that a full and fair opportunity has been af-

forded him to try his right in the courts; for it cannot justly be considered that he is in default and laches until such just opportunity has been afforded him and he has failed to avail himself of it.   Any attempt to cut off his right without having afforded him such just and reasonable opportunity is not, properly, a statute of limitations at all.  It savors rather of spoliation and plunder.  Cooley, Const. Lim. (6th ed.), 449. No doubt, under a statute which provides for actual notice to the owner, a shorter limitation could be held reasonable than where constructive notice only is provided.  Under this statute, many an owner may, without fault, be without actual knowledge of the pendency of proceedings against his property, until the bar of this statute has foreclosed his right; and this may all well happen before any work, such as might arrest the attention of resident owners, is actually commenced under the contract.   It is not questioned that all the proceedings relating to the assessment may be supported on notice by publication only; but the fact that the notice provided for is constructive only is an element proper to be considered in determining whether the time limited affords reasonable opportunity for the owner to assert his right. No doubt such time should be allowed as would give a reasonable chance to acquire actual knowledge of the pendency of proceedings against his property, and to ascertain and assert his rights.   No absolute rule can be laid down as to what length of time will be deemed reasonable for the government of all cases alike.   Different circumstances require different rules.   What would be reasonable in one class of cases would be entirely unreasonable in another.   *Wheeler v. Jackson*, 137 U. S. 245, 255.   While it is, no doubt, convenient and desirable, on the part of the municipality, that all questions in respect to the validity of such proceedings shall be put at rest as soon as may be, still there is no such exigency as to justify even an apparently unfair abbreviation of the rights of property owners or undue advantage

taken.  The time allowed should be ample to afford a rea-
sonable probability that he would become informed of the
proceedings against his property, and be fairly able to assert
his right, before it is finally barred.   It is considered that,
plainly, this statute does not afford such reasonable oppor-
tunity, and cannot be sustained as a valid limitation.   A
short statute of limitations is not an allowable substitute for
due process of law.   It is utterly subversive of that consti-
tutional protection to private rights of property.   The fact
that such short limitations have been sustained by some
courts does not persuade the court that they are just and
supportable on principle.

But it is said the plaintiff's remedy is limited to an appeal
from the assessment.   It is true that an appeal is given to
the owner who feels aggrieved by the determination of the
board of public works; but this appeal does not stay the
progress of the work if the contract has been let, nor the is-
suing of the certificate against the lot for the benefit as-
sessed; and, in case the appellant succeeds on his appeal, the
only remedy given him is that "the difference between the
amount charged in the certificate so issued and the amount
adjudged to be paid as benefits accruing to the real estate
described in the certificate shall be paid by the city out of
the general fund."   Sec. 125.   It is also declared that the
appeal so given "shall be the only remedy of the owner of
any parcel of land   .   .   .   for the redress of any grievance
he may have by reason of the making of such improvement."
Sec. 126.   It is obvious that upon this appeal only the proper
amount of benefits to the particular lot can be investigated.
No remedy appropriate to any other wrong is given.   It
furnishes no remedy by which to avoid an unequal and void
assessment.   Clearly, the appeal is no adequate remedy for
the lot owner in this case; and it will not be presumed that
the legislature intended the appeal given to be the exclusive

Hayes vs. Douglas County and others.

remedy, except as to matters which can be redressed upon the appeal. *Pier v. Fond du Lac*, 38 Wis. 470.

The Columbian Fair stone tax was altogether unauthorized and void.

It was error to limit the amount of costs to be recovered to $30. The court had exhausted its powers over the matter of the costs when it had determined that the plaintiff should recover them. The law determines their amount. R. S. sec. 2918, subd. 7; Id. sec. 2921; *In re Carroll's Will*, 53 Wis. 228.

The judgment should be reversed on both appeals. On payment of the sum of $421, the taxes for general fund hereby held valid, and the sum of $4,497.30, for taxes and assessments conceded by both parties to be valid,— in all, the sum of $4,968.30, with legal interest, that is, with interest at the rate of seven per cent. per annum up to March 27, 1893, and six per cent. per annum thereafter up to the time of payment (*Pierce v. Schutt*, 20 Wis. 423; *State v. Guenther*, 87 Wis. 675), the tax certificate and the several special assessments hereby declared void, and the tax for the Columbian Fair, should be vacated and set aside.

*By the Court.*— The judgment of the circuit court is reversed on both appeals, and the cause remanded with directions to render a judgment in accordance with this opinion.

MARSHALL, J., took no part.

A motion by the respondents for a rehearing on the plaintiff's appeal was denied March 10, 1896.

The question what public purposes will justify the use of money raised by taxation is considered in an extensive note to *Daggett v. Colgan* (92 Cal. 53) in 14 L. R. A. 474; and the necessity of benefits to sustain assessments for improvements is the subject of a note to *Re Madera Irrig. Dist.* (92 Cal. 296) in 14 L. R. A. 755.— REP.