HENRY GARDT *et al.*

*v.*

GEORGE W. BROWN *et al.*

*Filed at Ottawa March 24, 1885.*

1. CONSTRUCTION OF CONTRACT—*two instruments construed together.* Where two written instruments are executed as the evidence of one transaction, they will be read and construed together as one instrument, in arriving at the intention of the parties.

2. SAME—*in the case of a deed and lease—as to the use of the leased premises in connection with the premises conveyed.* The owner of a hotel sold a strip of land in the rear of the hotel, on which to erect a building for a dram-shop, and at the same time leased to the purchaser two rooms in the basement of the hotel for five years, to be used for billiard rooms in connection with the saloon. The deed for the strip of ground contained a clause that the grantee should have the right to use the south wall of the hotel building to join the roof of the building he might erect, and should also have the privilege to cut a door through from such building into the basement rooms of the hotel. It was *held*, that the clause in the deed and the written agreement for the lease should be construed together, and when so construed gave the grantee no right to maintain the door from his saloon into the basement of the hotel after the expiration of his lease of the basement rooms.

3. SAME—*parol evidence in explanation of a contract in writing.* In some cases parol evidence is admissible to show the purposes and circumstances under which a written contract was entered into by the parties, but

never to vary, alter or contradict its terms. The parties are not allowed to testify to their intention and understanding of a written agreement, but it must speak for itself.

4. CHANCERY PRACTICE— *dismissal of bill on dissolving injunction.* There is no error in dismissing a bill in chancery on the hearing of a motion to dissolve an injunction granted thereon, where the bill, on its face, shows no right to equitable relief.

5. SAME—*election to treat an order as a dismissal of bill.* An order of a court in a suit for an injunction, etc., was, that the temporary injunction be dissolved; and further, that if the complainant desired to take an appeal, the bill be dismissed: *Held,* that by appealing from the order, the complainant elected to have his bill dismissed, and could not urge the dismissal as error.

APPEAL from the Circuit Court of Knox county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. McKENZIE & CALKINS, for the appellants.

Messrs. WILLOUGHBY & DOUGHERTY, for the appellees.

Mr. JUSTICE WALKER[*] delivered the opinion of the Court:

It appears from the record that G. Henderson and P. Holstrom, prior to July 20, 1878, had leased two rooms in the basement of Brown's hotel, in Galesburg, in this State, in which they kept a dram-shop and billiard saloon. Their lease was about expiring, when it was agreed the owners of the hotel would sell to Henderson a strip of ground in the rear of the hotel, on which to erect a building for a dram-shop, and to lease the two rooms at a reduced rent, and to permit Henderson to cut a door in the wall between his saloon building and these rooms. The arrangement was made, and the

---

[*]Per CURIAM: The opinion in this case was prepared by the late Mr. Justice WALKER, but in consequence of his illness at the January term, 1885, it was not read and considered by the other members of the court during his lifetime. The case was continued under advisement until the March term, 1885, when the opinion was read and concurred in by a majority of the members of the court, and it was then adopted, and ordered to be filed as the majority opinion of the court, a minority of the members of the court not concurring therein.

deed conveying the property was executed, giving permission to Henderson to join his saloon building to the hotel, and to cut the door in the wall between it and these rooms. At the same time, the lease was executed for the two basement rooms, for five years, commencing the 20th of August, 1878, and ending August 20, 1883. Henderson erected his building, and occupied it as a dram-shop, cut the door connecting the dram-shop with the two basement rooms, and occupied them as a billiard saloon until the lease expired. When the lease expired, the owners of the hotel declined to renew the same, but permitted Henderson to occupy the rooms by the month. About the 1st of April, 1884, the owners of the hotel agreed to lease these rooms to Case, the proprietor of the hotel, and some time in that month Henderson sold his saloon property to Gardt, Fröhlich & Nurdlinger, the appellants. On the last day of April, 1884, the owners of the hotel demanded the possession of the basement rooms, and on the 7th of May following, Henderson surrendered possession and returned the keys of the rooms. On the same day, the owners of the hotel proceeded to close the door, but were prevented by force. Subsequently appellants filed a bill and procured a temporary injunction restraining the closing up of the door, or from in any manner interfering with it, or from preventing ingress or egress to and from appellant's building by way of the basement rooms. An answer was filed, and a motion entered to dissolve the injunction, which motion was heard on bill, answer and affidavits, and an order was entered dissolving it, and dismissing the bill.

It is insisted the court erred, because it is claimed that the provision in the deed is a covenant that runs with the land. The clause of the deed relied on is as follows: "Said Henderson shall have the right to use the south wall of said hotel building to join the roof of the building that he may erect; also, to have privilege to cut a door through from the building that he may erect, into the basement of the hotel,

situated in the county of Knox, in the State of Illinois."
The deed and lease were a part of the same agreement, and
in ascertaining the intention of the parties they must be con-
sidered together. No rule of interpretation is more familiar,
than when two instruments are executed as the evidence of
one transaction, they shall be read and construed as one in-
strument. Then, when the deed and lease are read together,
what was the purpose of the parties as manifested by these
instruments? Henderson was purchasing this ground on
which to erect a building for the purpose of a dram-shop.
He was leasing these rooms in the basement for the purpose
of a billiard saloon. By opening this door in the wall of
the hotel it established a communication between the dram-
shop and the billiard saloon, which was no doubt intended to
increase the custom of both during the continuance of the
lease. It was for the better and more profitable enjoyment
of the lease that Henderson was given permission to cut the
door in the wall. The door was manifestly ancillary, or an
appendage, to the lease, and for its more commodious enjoy-
ment. Had this provision been embodied in the lease, we
suppose no one would have doubted the proposition; and yet it
is as manifest such was the intention of the parties, although
found in the deed. Can any one imagine that the owners
of the hotel intended to bind themselves to lease the rooms
perpetually on the same terms, and for the same purpose,
to Henderson and his grantees? Surely not. Or that they
were binding themselves to forever keep the house as a hotel?
Such a construction would be manifestly against the inten-
tion of the parties. Nor is it any more reasonable to sup-
pose they intended to covenant that the door should continue
perpetually, when it could not be of the slightest benefit to
appellants, as with the expiration of the lease all their right
to enter the rooms terminated, absolutely and unconditionally.
Nor is it claimed that the owners of the hotel have no right
to shut off all access to these rooms from all other quarters;

and if so, what possible benefit can appellants derive from keeping it open? Absolutely none. The law will not interfere to enforce a mere barren right, if they had such, and that seems to be all that is claimed. There can be no question that appellees may cut off all access to these rooms other than by this door. That does not seem to be denied. Nor is there anything in the deed from which it can be inferred that the owners undertook to keep any pass-way from the hotel, or from the outside of the building, open, to these rooms.

If the claim of appellants is well founded that this door must be kept open that guests may have access to the dramshop from all parts of the hotel, then appellants have acquired these basement rooms as a pass-way for all time to come. It is wholly unwarrantable to infer that either party supposed that such was the effect of the deed. Business men do not so act, and had it been their intention it would have been so expressed. The only reasonable inference from the language of the deed is, that it was intended to enable the lessee to enjoy his term with more advantage and profit during its continuance, and to terminate with the lease,—that the privilege of using the door was coëxtensive only with the lease, and terminated with it. The construction contended for would virtually give appellants the control of appellees' property. It would deprive them of the right to appropriate the hotel building to any other use. The presumption that the parties so intended is so utterly improbable that no strained construction will be indulged to reach such a conclusion, and to do so, such a construction must be adopted, or rather without anything to warrant such a conclusion by any kind of rule of interpretation.

Affidavits were filed to explain the intention of the parties when these instruments were executed. All know that it is an inflexible rule that when parties reduce a contract to writing, the presumption is it speaks their intention, and the rule excludes all extrinsic evidence to change or vary the inten-

tion as expressed in the written agreement. In some cases verbal evidence is admissible to show the purposes and circumstances under which the contract was entered into by the parties, but not to vary, alter or contradict its terms. From the affidavits filed, the purpose seems to have been not to accommodate the dram-shop alone, but both it and the billiard saloon, jointly, and if so, then, when the lease expired and the billiard saloon was ended, the joint purpose ended, and when that occurred, one of the main purposes of licensing the opening of the door had been accomplished, and the joint purpose was fulfilled, and being so, the privilege came to an end. Parties in such cases can not change agreements by testifying to their intention or understanding of a written agreement. It must speak for itself, and that intention must be gathered from the language the parties have employed to express that intention. If a mistake has occurred in drafting the contract, contrary, in any particular, to their intention, the parties may, by bill, reform the agreement. But nothing of the kind is alleged in the bill in this case, and we must look to the agreement itself for its meaning, and when ascertained it will be enforced.

It is urged that the court, on dissolving the injunction, should have retained the bill for a hearing on evidence. We are unable to perceive any reason for doing so, because the bill on its face disclosed no equity, and unless it had been amended it would have been useless to retain it for any purpose. The bill, as framed, involved only the construction of the deed and lease, and that arose on the bill. It was therefore improper to retain the bill, as to have done so would only have resulted in increased costs. Appellants have treated the decree as final, and had they not, their appeal would be dismissed. The circuit judge who tried the case made this order: "The order is, that the injunction be dissolved; and further, if complainants desire to take an appeal, that the bill be dismissed." It was then optional with appellants to

have the bill retained or to consider it as dismissed. By appealing they chose to have it dismissed, and having made the election they must be held to their choice.

After a careful examination of the entire record and arguments in the case, we are unable to perceive any error, and the decree of the court below is therefore affirmed.

*Decree affirmed.*