## John Wood Todd v. Edward C. Mitchell.

1. FRAUD.—*When Admissible at Law to Impeach a Deed.*—In a trial at law, fraud in the execution of a deed may be given in evidence, but it can not be proved that the transactions which preceded and induced the execution of the deed were fraudulent, and where a party knowingly and voluntarily signs a deed, although he be induced thereto

Todd v. Mitchell.

by the fraudulent contrivances of others, yet if it be such as will convey title it can only be impeached and set aside, and parol evidence received for that purpose in a court of equity, and in the absence of reformation or a setting aside of it for fraud, or other sufficient ground, the terms of the deed must control.

Covenant, for breach of warranty.  Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding,  Heard in this court at the October term, 1896.  Affirmed.  Mr. Justice WATERMAN dissenting.  Opinion filed November 30, 1896.

MILLARD & ABBEY, attorneys for appellant.

EDWIN WHITE MOORE, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This action was brought by appellant as plaintiff, against appellee as defendant, to recover damages for a breach of covenants against incumbrances, contained in a warranty deed of certain real estate in Highland Park, Cook county, made by appellee to appellant in the year 1877.

To the declaration, the defendant pleaded the general issue of *non est factum*, and also special pleas of a release under seal of the cause of action mentioned in the declaration, by the plaintiff to the defendant, executed June 10, 1890, for a valuable consideration.

General replications to the special pleas were filed, and upon issues joined, the cause was submitted to the court without a jury.

After the evidence had been heard, but before judgment, the appellant was given leave to file additional replications, setting up that the pleaded release was obtained by fraud, and averring that the fraud consisted in a concealment by appellee, in collusion with others, from appellant of the existence of the cause of action declared upon, of which they then knew, but he did not, by means of which concealment the appellant, by the appellee and those in collusion with him, was led to believe and did believe, that the re-

lease related only to matters and things involved in a certain chancery suit brought by appellee against appellant on June 3, 1890, and was procured and induced to sign said release.

The breach of covenant that was made to appear, arose from the foreclosure by a trustee's sale, made in 1887, under a " blanket " trust deed in the nature of a mortgage, made by the Highland Park Building Company in 1875, covering the lots in question and other premises, the lien of which was prior to the title of appellee, and of which sale or foreclosure it does not appear that appellee knew until in March, 1890, nor that appellant had personal knowledge until in August, 1893, which was more than two years after the release in question was given.

Besides the transaction concerning the Highland Park lots, the parties seem to have had other relations concerning other real estate, and on said June 3, 1890, when appellant was in Chicago, he being a resident of London, England, the appellee filed a bill in equity for an accounting from him.

The appellant, at that time having trouble with one B. F. Jacobs concerning matters between themselves and others, which was in process of compromise when appellee's bill for an accounting was filed, insisted with Jacobs that before he would go further in the pending negotiations for a settlement of such controversies, he, Jacobs, must procure an acquittance from appellee of all matters involved in his equity suit for an accounting, and for the beginning of which suit, Jacobs testified that the appellant held him responsible.

The result was, that without the personal participation of appellant, except to execute the paper, the following release was executed by both appellant and appellee :

" This agreement and release, made between Edward C. Mitchell, of Chicago, Illinois, and John W. Todd, of London, England, witnesseth :

That, whereas, there is a difference between the parties hereto respecting certain profits in some real estate transactions of said Todd in Chicago, Illinois.

And, whereas, said Mitchell has lately brought his action against said Todd for an accounting between himself and said Todd;

And, whereas, said parties hereto have compromised said differences :

Now, therefore, in consideration of said differences, and in further consideration of one dollar and other good and valuable considerations passing from said Todd to said Mitchell, and from said Mitchell to said Todd, the parties hereto do hereby forever release and discharge each other from any and all claims, demands, accounting, and from any and all profits, dealings, moneys, or other values whatever. And in consideration aforesaid, do hereby forever release and discharge each other from any and all claims and demands of any name and nature whatsoever which either may have against the other.

In witness whereof, said Edward C. Mitchell and John W. Todd have hereunto set their hands and seals, this 10th day of June, A. D. 1890.

EDWARD C. MITCHELL, [Seal.]
J. W. TODD.           [Seal.] ”

There does not seem to be much, if any, question but that in the negotiations which ensued between Jacobs and the appellee, and culminated in the release, the question of the liability of appellee to appellant upon appellee's covenant against incumbrances contained in his deed to appellant, was talked of and considered, but from anything contained in this record, whatever the true fact may be, concerning which we should not, in view of other possible litigation between the parties, express an opinion, it is quite plain that appellant did not consider such question, for the reason that he was not actually informed until long afterward, that the title to the premises had failed, and hence did not know that he had any claim, because thereof, against appellee.

Much argument has been made upon the question whether Jacobs was the agent of the appellant in conducting the negotiations which culminated in the execution of the release and the dismissal of the suit in equity brought by appellee

against the appellant, and whether the notice that Jacobs had of the right of action then existing in appellant against the appellee for the breach of covenant declared upon, constituted notice to the appellant which would bind him, but we do not deem it to be necessary to consider those questions, or others to the same point. Nor need we consider as to whether there was, or not, error in excluding offered evidence touching the question of fraud, further than to say that at the time the evidence was offered, there was no issue of fraud presented by the pleadings. It was not until after all evidence was in, that the replications presenting that issue were filed, or asked to be filed, and it would seem that it should not be held to constitute error to exclude evidence that might tend to establish some issue not before the court, when upon the issues, as formed, it was not error.

The majority of the court feel that the case must be decided upon other grounds.

The fraud pleaded by the additional replication consisted in the concealment of a material circumstance known to the appellee, but unknown to the appellant, whereby appellant was induced to execute the release.

Such might be ground in equity for a reformation of the release so as to make it comply with what was in the contemplation of the parties at the time it was executed, or for an avoiding of it entirely. But we regard the release as constituting a perfect bar at law.

" The rule is familiar, wherever the distinction between law and equity is preserved, that in a trial at law, fraud in the execution of a deed may be given in evidence, as that, through misreading, or the substitution of one paper for another, or by other device and trickery, he was induced to seal it, believing, at the time, that he was sealing something else; but it can not be proved that the transactions which preceded and induced the execution of the deed were fraudulent. Where a party knowingly and voluntarily signs a deed, although he do so in violation of his duty and of the laws, or be induced thereto by the fraudulent contrivances of others, yet if it be such, upon its face, as will convey

title, it can only be impeached and set aside, and parol evidence be received for that purpose, in a court of equity." Windett v. Hurlbut, 115 Ill. 403; Johnson v. Wilson, 33 Ill. App. 639.

In the absence of reformation, or a setting aside of it because of fraud, or other sufficient ground, the terms of the release must control. So long as it stands, the presumption is, in accordance with inflexible rules, that it speaks the intention of the parties to it, and they can not be permitted to contradict or change it by testifying as to what the intention of the paper was.    Gardt v. Brown, 113 Ill. 475; Wood v. Clark, 121 Ill. 359.

Upon the record as it stands, the judgment of the Circuit Court must be affirmed.

Mr. Justice Waterman dissenting.

It is a familiar rule that the court, in construing an instrument, will place itself in the shoes of the parties by whom it was made, that, viewing the subject-matter from the standpoint which they occupied, it may arrive at a correct understanding of the meaning intended to be expressed by the words made use of.

Applying this rule to the present case, we find that some years prior to the time at which the release under consideration was made, appellee conveyed by warranty deed certain premises to appellant, the title to which afterward failed, leaving appellee liable upon his covenants; that at the time the release in question was made, appellee was aware of such failure, while appellant was entirely ignorant of the same; that one Jacobs, through whose agency appellant had purchased the property in question, was also, and had been for some time, aware of the failure of title to such property, but had failed to inform appellant of the same, and knew that appellant was ignorant in respect thereto.

Jacobs was, just before, and at the time the release was executed, in the midst of transactions with appellant of the greatest importance to him, Jacobs, involving his entire property, so that Jacobs felt it was for his interest, essential

that he should come to an amicable understanding and settlement with appellant. Of this Jacobs informed appellee, and also informed him that because of the suit which appellee had commenced against appellant, appellant was very indignant, and believing that Jacobs had instigated the same, refused to come to any agreement or settlement with him, Jacobs. Jacobs thereon told appellee that he wanted his suit withdrawn, so that he, Jacobs, could settle his own matter with appellant, and finally, to induce the withdrawal of said suit, Jacobs gave to appellee his, Jacobs'' note, for $10,000, as a consideration for the withdrawal of said suit.

Appellant knew nothing about the means resorted to by Jacobs to procure the withdrawal of appellee's suit.

Under these circumstances, with the knowledge on the part of appellee that appellant was entirely ignorant of his just claim against appellee upon his covenants of warranty, the release in question was executed. Prior to the making of this release, appellee consulted his lawyer, Baldwin, as to a release already drawn, asking him if it would cover appellant's claim for the failure of the title to the Highland Park lots. Baldwin advised appellee that it would, but to make sure, drew up a new release, and inserted therein a mutual release clause, advising Mitchell that such clause would cover the liability on the lots. It is apparent that when the last mentioned release was executed, appellee was well aware that appellant did not and could not intend thereby to release appellee from his liability on the covenants contained in his deed for the Highland Park lots, because appellee well knew that appellant was entirely ignorant of the failure of his title to said lots, and the consequent obligation which appellee was under upon his covenants. Appellee executed and obtained this release, fully believing that thereby he was obtaining from appellant that which he had no intention of giving.

Construing the instrument from the standpoint of the parties, the general words of release must be held to include only what the parties, not one of them, who knew that the

Todd v. Mitchell.

other was being deceived, intended, which was to execute a release of the claims which each had in mind, and was informed of. A release, however general in its terms, will be limited to those things contemplated by the parties at the time it is made, and will not be construed to include particular things then unknown and uncontemplated. The circumstances surrounding the parties at the time a release is made, are to be kept in view, as well as the purpose for which it was executed. A release will not be construed so as to include rights of which the releasor was ignorant when he executed it. 20th Am. & Eng. Ency. of Law, 745; Addison on Contracts, 8th Ed., Vol. 2, p. 1223; Leake on Contracts, 1st Ed., 925.

The general words of release will be restrained in their effect by the recitals contained in the instrument, as applied to the subject-matter, and this is true at law as well as in equity. Lyall et al. v. Edwards et al., 6 Hurlstone & Norman, 336; Addison on Contracts, p. 1223; Hazelgrove v. House, 6 Best & Smith, 975; Blair v. Chicago & Alton Ry. Co., 89 Mo. 383–393; Payler v. Homersham, 4 Maule & Selwyn, 423; Lyman v. Clark, 9 Mass. 235; Rich v. Lord, 18 Pickering, 322.

In Simons v. Johnson & Moore, 3d Barnwell & Adolphus, 175, 23 Common Law, 84, the release under consideration was most sweeping in its terms, being "unto the said J. Johnson, his heirs, executors and administrators, and every of them, all and all manner of actions and causes of action, suits, controversies, sums of money, bills, bonds, writings obligatory, accounts, reckonings, damages, judgments, executions, claims and demands whatsoever, both at law and in equity, which against him, J. Johnson, his heirs, executors and administrators, or any of them, or against his, their, or any of their lands, tenements, goods, chattels, or real or personal estate, he, N. Simons, now hath, or he, his heirs, executors or administrators may hereafter claim, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the day of the date of these presents."

Yet the court there held that it would look to the recital of the release, and that parol evidence of the nature of the actions mentioned in such recital, was admissible; and so doing, the court found that the release was intended to, and did, apply only to the matter recited, namely, the actions then depending, and that the object of the release was to put an end to them. In the present case, the release contains the following recitals:

"That, whereas, there is a difference between the parties hereto respecting certain profits in some real estate transactions of said Todd in Chicago, Illinois.

And, whereas, said Mitchell has lately brought his action against said Todd for an accounting between himself and said Todd.

And, whereas, said parties hereto have compromised said differences."

And then goes on to say, that " therefore, in consideration of said differences, and of one dollar and other good and valuable consideration, the parties do release," etc.

The general words of the release, as appears to me, are restricted by the recitals, they clearly showing what the parties had in mind, and what it was which they intended to release; which construction is in entire accord with the light thrown upon the transaction by a consideration of the circumstances surrounding when it was made. I am therefore of the opinion that certain propositions of law asked by the plaintiff, and refused by the court, should have been held, and that the judgment of the Circuit Court should be reversed and the cause remanded.