(No. 21750.—

OSCAR NELSON, Auditor of Public Accounts, *vs.* THE JOHN B. COLEGROVE & Co. STATE BANK.—(CHARLES H. SHAMEL, Plaintiff in Error, *vs.* D. DIGBY LARGE, Receiver, Defendant in Error.)

*Opinion filed December 22, 1933.*

HERRICK, J., took no part.

PROVINE & WILLIAMS, for plaintiff in error.

OSCAR J. PUTTING, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Auditor of Public Accounts closed the John B. Colegrove & Co. State Bank of Taylorville on October 10, 1929, and shortly thereafter placed a receiver in charge of the bank. On November 13, 1929, the Auditor filed a bill of complaint in the circuit court of Christian county charging the insolvency of the bank and praying for its dissolution and the settlement of its affairs. Charles H. Shamel filed a petition in the proceeding for the return of certain bonds pledged as security for a deposit of money made by the State Treasurer and, in case the particular bonds could not be returned, that other bonds of the same issue and denomination should be substituted. The receiver answered the petition, evidence was introduced and the court, by its decree, allowed the petitioner a preferred claim for the proceeds of part of the bonds, and a claim as a general creditor for the amount of the proceeds of the remaining bonds. Complaining that the portion allowed

as a general claim should also have been given a preference in payment over the bank's general creditors, the petitioner prosecuted an appeal to the Appellate Court for the Third District. The decree was affirmed by that court and thereafter the petitioner made application to this court for a writ of *certiorari*. The application was granted and the record is submitted for a further review.

The John B. Colgrove & Co. State Bank was organized in 1920 and conducted a general banking business in the city of Taylorville, in Christian county, until it was closed by the Auditor of Public Accounts. Substantial withdrawals of deposits during July and August, 1929, made it imperative for the bank to obtain additional funds to continue in business. To this end, John B. Colegrove, the president of the bank, on two occasions, sought to induce Charles H. Shamel, the plaintiff in error, who was a stockholder, to purchase certain mortgages which, it was represented, the bank held. The plaintiff in error, after an investigation, refused to buy any of the mortgages offered to him.

Colegrove knew that Shamel held ten Imperial Japanese government bonds for $1000 each, and three United States government bonds for $1000, $500, and $50 respectively. Late in August, 1929, Colegrove asked him to allow the use of his bonds to obtain for the bank a deposit of $10,000 by the State Treasurer. For this purpose, the plaintiff in error was informed the bank would pledge desirable first mortgages with him. Colegrove later exhibited to him notes and mortgages executed by Samuel Peat and his wife, by Grace Flesher and by Martha L. Perrine and her husband. Negotiations ensued with the result that the plaintiff in error delivered his bonds to Colegrove for the bank's use, and received in return the foregoing notes and mortgages, and Colegrove's note, dated August 29, 1929, by which he promised to pay $11,550 to Shamel's order, on December 1, 1929, with interest at seven per cent. It was recited in the body of the note that the three mortgages were pledged as

collateral security for its payment. The back of the note bore the following endorsement:

"The following agreement is made a part of the within described note. I agree on or before December 1, 1929, to return to C. H. Shamel the following identical bonds which I have borrowed from him, $10,000.00 Imperial Japanese government bonds 6½ series, 1954, No. 126695/704, coupons Feb. 1, 1930, and thereafter, $1550.00 Liberty bonds 4¼ S. 1938. GO 1903477 for $1000.00, GO 8732277 for $500.00 and JO 588085 for $50.00. Coupons Oct. 15, 1929, and thereafter, and pay expense, insurance, etc. from Washington, D. C., to Taylorville and return to there. No coupons to be removed by me from said bonds.

(Signed) JOHN B. COLEGROVE."

Two or three days later Colegrove informed the plaintiff in error that the bonds had been pledged as security for the desired deposit of $10,000 by the State Treasurer. The general ledger of the bank disclosed that bonds of the face value of $11,550 had been borrowed from the plaintiff in error. At the time he delivered his bonds to Colegrove, the bank owned the mortgage executed by Martha L. Perrine and her husband but not those made by Samuel Peat and his wife and by Grace Flesher.

Late in November, 1929, after the bank had been closed, the State Treasurer sold four of the Japanese government bonds and all the United States government bonds, pledged with him as stated, for $5786.71. This sum, with the proceeds theretofore derived by the State Treasurer from the sale of other bonds not involved in this proceeding, produced $113.08 in excess of the bank's indebtedness to the State. Accordingly, the latter sum was remitted and the remaining Japanese government bonds were delivered to the receiver of the bank on December 9, 1929. The receiver did not know that the plaintiff in error claimed any interest in these bonds and on December 15, 1929, sold the six Japanese government bonds returned by the State Treasurer for $6281.

The plaintiff in error instituted suits to foreclose the mortgages executed by Samuel Peat and his wife and by

Grace Flesher. These mortgages, it appeared, were part of the assets of a deceased person's estate and the bank had no interest in them. The mortgage made by Martha L. Perrine and her husband proved to be a junior incumbrance. These three mortgages the plaintiff in error offered to surrender upon the return to him of the bonds Colegrove had obtained from him.

The court found that the plaintiff in error was entitled to have paid to him the sum of $113.08 remitted to the receiver by the State Treasurer on December 9, 1929, and the money realized by the receiver from the sale of the six Japanese government bonds on December 15, 1929, amounting to $6281, with interest on the first sum from December 9, 1929, and on the second from December 15, 1929, at two per cent per annum, the rate actually earned by the receiver; that for these two sums, with interest, the plaintiff in error was entitled to a preference or priority in payment over the other creditors of the bank; and that, with respect to the proceeds received by the State Treasurer from the sale of the four Japanese government bonds and the United States government bonds, which, less the remittance of $113.08 to the receiver, amounted to $5673.63, the sum applied to satisfy the bank's deposit liability to the treasurer, the plaintiff in error was not entitled to a preference in payment but merely to the allowance of a claim as a general creditor of the bank. These findings and the orders resulting therefrom were incorporated in the decree.

. The present review concerns only that portion of the decree by which an ordinary claim for $5673.63, without priority in payment over other creditors, was allowed the plaintiff in error. He contends that the transaction with Colegrove constituted a bailment of his bonds and that the bank held them under an express trust; that the bonds were obtained from him by fraud and misrepresentation, and that upon payment, by the sale of the bonds, of the bank's indebtedness to the State, the plaintiff in error became sub-

rogated to the State's right of priority in payment to the extent the proceeds of the sale satisfied that indebtedness.

The general rule is that, unless a contrary intention is manifested, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are regarded as one instrument and will be read and construed together as if they were as much one in form as they are in substance. (*Gardt* v. *Brown,* 113 Ill. 475; *Alexander* v. *Loeb,* 230 id. 454). Courts in the construction of contracts, look to the subject matter, the language employed and the surrounding circumstances. They are not excluded from the light which the parties enjoyed when the contract was executed. (*Hayes* v. *O'Brien,* 149 Ill. 403; *Close* v. *Browne,* 230 id. 228). In case of doubt, the interpretation which the parties by their acts under the contract have given it, will have weight, and may be controlling, provided the plain terms of the agreement are not overthrown. Bishop on Contracts, (2d ed.) sec. 412.

The instrument given by Colegrove to the plaintiff in error purported on its face, apart from the description of the collateral security, to be merely an ordinary promissory note. By the endorsement on the back of the instrument Colegrove agreed, on or before December 1, 1929, to return to Shamel the bonds that had been obtained from him. If this endorsement constituted an independent contract, its terms would have been clear and unambiguous. The endorsement, however, did not set forth the entire transaction for, by its terms, it was expressly made a part of the note. When the plaintiff in error delivered his bonds to Colegrove, he took the latter's note for the sum of their principals with the mortgages as collateral security for the payment of the note. The plaintiff in error knew that the bonds were to be pledged with the State Treasurer for a deposit in the bank of the State's funds. When the State Treasurer deposited $10,000 in the bank, the State parted

with the title to the money and became a creditor of the bank. There is no evidence that the State Treasurer knew the bonds had been obtained from the plaintiff in error; and it was not essential to the validity of the pledge that the bonds belonged to the pledgor. As between the bank and the State Treasurer the transaction was valid. (Schouler on Bailments, (3d ed.) sec. 181). If the debt, for the payment of which the bonds were pledged, was not paid when due, the State Treasurer, after notice, might sell the bonds. (Schouler on Bailments, (3d ed.) sec. 227; Jones on Collateral Pledges, (3d ed.) sec. 603; *Peacock* v. *Phillips,* 247 Ill. 467). The State Treasurer was a stranger to the transaction between Colegrove and the plaintiff in error. There was no relationship of any character between the plaintiff in error and the State Treasurer. So far as that public officer was concerned, the bonds were the property of the bank and their deposit with him neither constituted a bailment by the plaintiff in error nor gave rise to an express or constructive trust.

The contention that the bonds were obtained from the plaintiff in error by fraud and misrepresentation cannot be sustained. The petition contains no such allegation. In the absence of a charge of fraud and misrepresentation in the petition, there was no basis for evidence to that effect. The circuit court did not consider the question; the Appellate Court found that no such issue was raised and the question is not presented to this court.

The claimed right of subrogation is likewise untenable. The plaintiff in error was neither a surety nor a guarantor for the bank and the right of subrogation cannot be placed upon that ground. Apart from affirmative constitutional or statutory provision, the State is entitled to priority over other creditors who do not have liens since the common law, adopted in Illinois, recognizes this right in the sovereign. (*People* v. *Farmers State Bank,* 335 Ill. 617).

The plaintiff in error fails to show how this attribute of sovereignty can be acquired by an individual or how he became subrogated to it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERRICK took no part in this decision.