Titus L. Thelin, Defendant in Error, v. Charles W. Marwitz et al., Plaintiffs in Error.

Gen. No. 37,262.

Opinion filed November 27, 1934.

EDWARD H. KUBITZ, for plaintiffs in error.

Wm. J. Sheridan, for defendant in error.

Mr. Justice Sullivan delivered the opinion of the court.

By this writ of error defendants seek to reverse a judgment entered against them in plaintiff's favor for $12,900 in a cause tried by the court without a jury.

Plaintiff entered into a written contract and later February 7, 1930, into a written supplemental agreement with defendants, Charles W. Marwitz, Dorothy Marwitz, his wife, and Emma Marwitz, his sister, to purchase from them a certain 10-acre tract of land in Cook county for $70,000, of which $17,000 was to be paid in cash and $53,000 in notes secured by a purchase money trust deed. The trust deed was to contain a partial release provision for the release of "any lot which will show on the official subdivision plat" of the property, upon the payment to the sellers of $3,500 for each North avenue corner business lot, $1,500 for each of the twelve North avenue 25 feet inside business lots and $750 for each of the remaining 48 lots. The contract provided that, upon the payment of $17,000 cash and the delivery of plaintiff's notes and trust deed for $53,000, defendants were to convey to him a good and merchantable title to the premises by "a good and sufficient general warranty deed." During the period from October 7, 1927, to December 12, 1929, plaintiff paid defendants $12,900 upon the purchase price of the property. The parties met in the offices of the Chicago Title & Trust Company, February 28, 1930, to close the deal, but did not do so then nor have they done so since that time. This action was brought by plaintiff to recover the $12,900 paid by him to defendants toward the purchase price of the land upon their refusal to close the deal and convey the property to him.

It appeared that when the parties met February 28, 1930, for the purpose of consummating the transaction, plaintiff tendered to defendants $4,100 cash to complete the $17,000 cash payment specified in the supplemental agreement and his notes and trust deed securing same for $53,000, and submitted a subdivision plat of the land; and that Marwitz, acting for and in behalf of all the defendants, refused to accept the cash, notes and trust deed.

It also appeared that, although the parties discussed the width of the North avenue corner business lots on many occasions and submitted sketches to each other indicating the width of such lots as each asserted same should appear on the official subdivision plat when prepared, both the original contract and the supplemental agreement are silent as to the width the four corner business lots on North avenue should be platted; and that a few weeks before the parties met on February 28, 1930, plaintiff had prepared by a registered land surveyor a subdivision plat of the property upon which the business lot at the corner of North avenue and First avenue (hereinafter referred to as lot No. 29) was shown to be 100 feet wide, two of the other North avenue corner business lots 29 feet wide and the fourth 30 feet wide.

Defendants ascribe this entire controversy and their refusal to consummate the deal to plaintiff's manner of platting these four corner business lots as above indicated. They contend that, while the contract for the sale of the lots is silent as to the width of the corner business lots on North avenue that were subject to release from the security of the trust deed upon the payment of $3,500 to defendants, the parties did not contemplate a subdivision of the property that would result in one corner business lot 100 feet in width and the other three 29 or 30 feet in width, and that under a proper construction of the contract it

must be determined that it was the intention of the parties that the business corners were to be equal in width or that the payments requisite for the release of same must be in proportion to the frontage of the respective lots; and that by reason of plaintiff's failure to carry out and comply with the terms of the contract and the supplemental agreement, defendants are legally entitled to retain as liquidated damages the $12,900 paid by plaintiff to them on the purchase price of the property.

Plaintiff's theory is that it was within the contemplation of the parties at and prior to the execution of the original contract that plaintiff intended to use corner lot No. 29 for a gasoline filling station which would require a frontage of at least 100 feet; that he was warranted under the contract in preparing and submitting to defendants the subdivision plat in question; and that, in any event, at the time the parties met to close the deal the registrar's certificate of title to the property disclosed that it was incumbered by a trust deed securing notes for $9,000, by reason of which defendants were unable to convey the title of the property to plaintiff in accordance with the terms of the contract of purchase.

Plaintiff testified that every sketch of the proposed subdivision submitted by him to the defendant Marwitz, from the time the original contract was executed, indicated the width of lot No. 29 to be the same as shown on the subdivision plat finally submitted, and that Marwitz offered no objection. He further testified in his own behalf as follows:

"Q. What was the purpose of that lot being made 100 feet. . . .

"A. Well, I told Mr. Marwitz at one time.

"Q. When was that?

"A. That was when we were negotiating the deal to begin with. That was in October, 1927.

"Q. Yes.

"A. About the time the contract was signed,— that that would be an exceptionally good corner for a gasoline filling station; that I had already built one and I intended to build one on that corner as North Avenue was paved and First Avenue came through, because that corner would have a cement highway— it has one now which it did not have when we bought the property, it has one on First Avenue and First Avenue is right up to the property and about to go past the property on the other side; and I told him it would be necessary at that time that we would have to have at least 100 feet for that filling station. That is all that was ever said about it."

Defendant Marwitz testified on cross-examination:

"Q. And you never objected to that First and North Avenue corner of 100 feet?

"A. I never did.

"Q. Just a minute. That answers it. Isn't it true further that the North Avenue and First Avenue corner is the choice piece in that subdivision?

"A. Yes.

"Q. Isn't it also true that it would normally and naturally be a gas station? A. Yes.

"Q. Isn't it further true that in the presence of Mr. Titus Thelin and Mr. Blaine Thelin discussion was had as to that corner being used as a gas station?

"A. It was in an off-hand way.

"Q. What do you mean by 'off-hand?'

"A. We discussed it, said it would make a good gasoline station.

"Q. Just an ordinary discussion?

"A. Yes.

"Q. Who said that?

"A. They said it and I said it.

"Q. That that would be a good gasoline station?

"A. Why that there would be a good corner for a gasoline station."

Marwitz testified further "then they got this plat made up, and I submitted to it, and all I wanted is

that they should go according to that plat even, and they objected to that, wanted to give me $2,000 instead of $5,000 for the corner.''

On recross-examination Marwitz testified as follows:

"Q. Your last statement was that Mr. Thelin wanted to give you for the corner, 100 foot lot No. 29, $2000.00, is that true?

"A. To release it.

"Q. To release it, is that true?

"A. Yes sir.

"Q. Isn't it true that Defendants' Exhibit 2, the trust deed that was submitted to you at the Chicago Title and Trust Company, executed by Mr. Thelin, specifically provided that he would pay you $3500.00 for the release of Lot No. 29, the lot in question?

"A. Yes. Yes, but they—

"Q. Well, what I mean is, isn't that true?

"The Witness: Yes, it is right in here, I said I would agree to this contract according to the way it was here, but not to $2000.00 there instead of $3500.00.

"Mr. Sheridan: Q. Where is any $2000.00?

"A. That is what they said they would give me.

"Q. Didn't they submit this trust deed with the notes and cash?

"A. No, they did not. They wanted to give me $2000.00 and I would not accept it.

"Q. Wasn't $4100.00 submitted to you at the Chicago Title and Trust Company?

"A. They would not accept—

"Q. Just a minute. Maybe we do not understand each other, Mr. Marwitz.

"The Court: Just listen to his question.

"Mr. Sheridan: Q. When you and I, Mr. Kubitz and Mr. Titus Thelin and Mr. Blaine Thelin were at the Chicago Title and Trust Company and there was exhibited to you $4100.00 in cash, this trust deed, Plaintiff's Exhibit 3, together with certain notes that

were submitted to you, didn't you understand at that time that that particular clause was in there?

"A. Sure I did, but I wanted to settle on this basis, this contract here (indicating).

"Q. On the basis of the trust deed that was submitted?

"A. Yes, sir.

"Q. Why didn't we settle?

"A. Because they only wanted to give me $2000.00 there.

"Q. But the notes accompanying this trust deed were made on the basis of $3500.00?

"A. On a release—I should release that for $2000.00 instead of $3500.00.

"Q. Where is any $2000.00 in there?

"A. That is what they said they would give me.

"Q. Didn't they submit this and the notes to you?

"A. No, they did not. They did not agree to settle on that thing there. ·

"Q. No, this was submitted to you together with the notes, wasn't it?

"A. No sir, they would not sign it.

"Q. Would not sign what?

"A. Would not give it to me and the notes, because I would not accept $2000.00 on that release. I said I would not release on $2000.00. They refused, not I."

It will be noted that Marwitz testified that defendants "would agree to this contract according to the way it was here, but not to $2000.00 there instead of $3500.00," and that he refused to comply with the contract for the sale of the land "because they only wanted to give me $2,000 there."

It is fair to assume that plaintiff was actuated to enter into the contract for the purchase of the 10-acre tract of land chiefly because of the desirability of the lot on the corner of North and First avenues for use as a gasoline filling station. Marwitz admitted discussing with plaintiff its desirability for such purpose prior to the execution of the original contract. Plain-

tiff testified that he told Marwitz "it would be necessary . . . to have at least 100 feet for that filling station."

Marwitz's testimony to the effect that he acquiesced in the subdivision plat finally presented obviates the necessity of construing the contract for the purpose of ascertaining the intention of the parties. However, if a determination of the issues necessitated construction of the contract, a fair interpretation of its terms would have to include consideration of the evidence of both plaintiff and Marwitz as to the desirability of lot No. 29 for filling station purposes, as well as plaintiff's expressed intention of using it for such purpose. Advised in advance as to the frontage requisite for the filling station defendants might contract for the release of the corner lots at such widths and upon such payments as they saw fit, and the mere fact that the lots as they appeared on the subdivision plat were of different widths is not conclusive of defendants' contention that it was the intention of the parties that the lots could only be released on payment on a frontage basis. That would entail the substitution of a new contract for that made.

To ascertain the intention of the parties the courts in the construction of contracts look to the subject matter and the surrounding circumstances. They are not excluded from the light which the parties enjoyed when the contract was executed. (*Hayes v. O'Brien,* 149 Ill. 403; *Close v. Browne,* 230 Ill. 228.) In case of doubt the interpretation which the parties by their acts under the contract have given it will have weight and may be controlling provided the plain terms of the agreement are not overthrown. (*Nelson v. Colegrove & Co. State Bank,* 354 Ill. 408; Bishop on Contracts, 2nd ed., sec. 412.) The parties to this cause have by their own acts interpreted the only phase of the contract concerning which there could be any doubt; plaintiff by submitting the subdivision plat,

and Marwitz by assenting to the plat submitted according to his own testimony.

Marwitz's testimony that he "submitted" to the final plat tendered and would agree to "this contract according to the way it was here," and that he refused to "settle," "because they only wanted to give me $2000.00" for the release of lot No. 29, is in itself a complete refutation of and sufficient answer to defendants' contention that they were entitled under the law to retain plaintiff's $12,900 as liquidated damages because of his failure to agree to pay more than $3,500 for the release of lot No. 29.

Marwitz then seeks to avoid his acceptance of the subdivision plat presented by insisting that after he had assented to and accepted it plaintiff asserted that he would only pay $2,000 for the release of lot No. 29 instead of $3,500 as specified in the contract.

The falsity of Marwitz's testimony that "they only wanted to give me $2000" instead of $3,500 for the release of lot No. 29 is conclusively demonstrated by the record. The trust deed admitted in evidence, as well as the notes which were tendered to Marwitz along with the $4,100 cash on February 28, 1930, provided for the payment of $3,500 for the release of each of the four corner business lots.

Defendants' attorney saw fit to testify in their behalf and no corroboration is found in his testimony of Marwitz's evidence that plaintiff only wanted to pay $2,000 for the release of the business corners. In fact the attorney's testimony was in effect a contradiction of such evidence.

The contract provided for 12 25-feet inside business lots on North avenue. That left 188 feet of North avenue frontage available for the four business corners specified in the contract which might be released upon the payment of $3,500 for each. Whether this 188 feet frontage was allocated to the four corners equally, allowing 47 feet frontage to each corner lot, or was platted as was done here, the amount that de-

fendants would have realized for the release of the four corners from the security of the trust deed would have been the same.

It is also fair to assume that if the deal had been consummated, and even though plaintiff had immediately secured the release of lot No. 29 by the payment of $3,500, he intended to fulfill his obligations under the trust deed in their entirety and that defendants would have received $70,000, the contract price they bargained for. If the deal had gone through plaintiff would have had a cash investment of $17,000 in the property, and it is unreasonable to infer that after he had secured the release of lot No. 29 by the payment of an additional $3,500 he would default as to the balance of the property, as argued by defendants, and sacrifice his investment.

The record discloses that when the parties met February 28, 1930, for the purpose of consummating the sale, the title to the property was incumbered with a trust deed securing certain notes for $9,000, and that neither Marwitz nor his attorney had in their possession a release of such trust deed. It would, therefore, have been impossible for defendants at that time to convey the title of the property to plaintiff in accordance with the terms of the contract, even though there had been no controversy between the parties as to the width of lot No. 29.

We are of the opinion that defendants are unlawfully withholding from plaintiff the $12,900 paid by him to them on the purchase price of the land and that it would be unconscionable to permit them to retain said sum. They refused to abide by their contract, and we think the trial court was entirely justified in entering judgment against them for the above amount.

For the reasons indicated herein the judgment of the superior court is affirmed.

*Affirmed.*

Gridley, P. J., and Scanlan, J., concur.