FRANK TAYLOR and JOHN P. KIRBY, Appellants, v. DRAINAGE DISTRICT No. 56, BOARD OF SUPERVISORS OF EMMET COUNTY, IOWA, ET AL.

**Drainage:** CONDEMNATION: CONSTITUTIONAL LAW: DUE PROCESS: COM-
1 PENSATION: WAIVER. Compensation for land taken and appropriated by the construction of a drainage system, and an opportunity to be heard on the subject before an impartial tribunal, are essential elements of due process of law, which cannot be obviated or

waived by mere forms of procedure, or a statutory presumption of waiver when none in fact exists; but the legislature may provide that a failure to take certain steps within a specified time, such as the filing of a claim for damages in a drainage proceeding, shall have the force and effect of a waiver of the claimant's right to damages for the appropriation of his land and to a hearing on the subject.

**Same:** NOTICE: JURISDICTION. A proceeding for the appropriation of land for drainage purposes is *in rem*, and notice thereof by publication is sufficient to confer jurisdiction. Due process of law does not require personal service.

**Same:** NOTICE BY PUBLICATION: SUFFICIENCY. Notice by publication of the establishment of a drainage district, to comply with the constitutional provision guaranteeing equal protection and prohibiting the taking of property without due process of law, must be for such length of time that persons of ordinary intelligence, having an interest in the subject matter and living in the community, will be reasonably likely to read the notice or learn of it through other sources. The statutory provision requiring publication of notice in such cases once each week for two successive weeks, the last publication occurring not less than twenty days prior to the day set for hearing, is held to give sufficient notice.

**Same:** NOTICE. Failure of the notice in such cases to state that the report of the engineer might be amended before final action did not affect the fact of giving notice; nor was the requirement that claims for damages be filed six days before the hearing inconsistent with the statute providing that claims shall be filed not less than five days before that date.

**Same:** CLAIM FOR DAMAGES: FAILURE TO FILE: EQUITABLE RELIEF. Where legal notice by publication of the establishment of a drainage district was given, the failure of a non-resident landowner through want of actual notice, inattention or misfortune, to file his claim for damages within the time required is not ground for equitable relief.

*Appeal from Emmet District Court.*—HON. D. F. COYLE, Judge.

TUESDAY, OCTOBER 6, 1914.

THE fee title to the fractional quarter section of land is in the plaintiff, Kirby, a resident of Emmet county, and of

him the other plaintiff, Taylor, purchased the same September 16, 1910, under written contract, by the terms of which, upon payment of the purchase price, Kirby was to convey the premises to Taylor and the latter entered into possession March 1, 1911. It appears that on October 15, 1909, certain landowners had petitioned the board of supervisors to establish a drainage district, which included the land in question; that in pursuance thereof an engineer had been appointed, and had filed his report July 20, 1910, recommending that the petition be granted and an open ditch be excavated, extending through plaintiff's land.

Thereafter notice of the pendency and prayer of the said petition was caused to be published by the board of supervisors in a weekly newspaper published in Estherville, Iowa, for two consecutive weeks, the last publication being on November 2, 1910, said published notice also stating that all claims for damages, or objections thereto, must be filed in writing in the office of the county auditor of said county on or before the 23d day of November, 1910; . . . that no other or different notice pertaining thereto was ever served, published, or given in any manner and these plaintiffs had no knowledge of said notice, or of said proceedings, until after the assessment for benefits as hereinbefore alleged; and these plaintiffs, by reason and because of not having any notice or information thereof, filed no claim for damages on account of the proposed construction of said drain.

Said weekly newspaper in which said notice was published was the Estherville Vindicator-Republican, which was a weekly newspaper of general circulation published within Emmet county within the meaning of the drainage law, but the plaintiffs aver that the said newspaper and all the newspapers published in Emmet county, Iowa, are local and weekly newspapers, whose circulation is confined principally to Emmet county, and very limited outside of Emmet county, Iowa, and that publication in the said Estherville Vindicator-Republican or any other newspaper published in Emmet county, Iowa, was not a publication or service that was adapted, or that could ordinarily or reasonably be expected, to convey notice or knowledge of the proceedings to nonresidents of the county, or nonresidents of the state, or to the plaintiffs, and

the plaintiffs aver that neither of them had any knowledge, notice, or information of said proceedings in time to file their claim for damages, or to have the same referred to the appraisers or commissioners appointed by the board of supervisors, or to make the same before the board at the time, or any of the times appointed, or in time to take an appeal from the action or nonaction of the board of supervisors, and the plaintiffs had no knowledge or information of the same until more than twenty days had elapsed after the establishment of the drainage district No. 56, and had no knowledge or information whatever until the actual work of excavation of the ditch upon the plaintiffs' premises had begun.

Other landowners filed claims for damages, and these were assessed as directed by statute, and the drainage district ordered established and the open ditch excavated in pursuance of a contract made as authorized by statute, appropriating eleven or twelve acres of plaintiff's farm, the same being taken irregularly and diagonally through and across the same, with banks on either side from the northeast to the southwest, rendering the two parts inaccessible from each other and damaging said land to the extent of not less than $1,600 in value. The assessment for alleged benefits against plaintiff's land amounted to $974. These are the allegations of the substituted petition, and further:

That the engineer's plats, profiles, and return of surveys are not in compliance with law in this: That the same do not show the number of acres of land to be taken, nor the costs of engineering or superintendence, and the board of supervisors had no sufficient facts or report upon which to base an intelligible judgment as to the propriety of establishing said district, nor whether it was practical, or whether the costs would be greater than the benefits.

(15) That no jury, or commission, or other body or person was ever appointed to select or determine the quantity of plaintiffs' land necessary to be taken for public use, or to determine the fact that the taking of their land was a public necessity, or to fix any valuation on any part of plaintiffs' land to be condemned or appropriated for public use, and that the

said taking was without due process of law and without compensation to the owners.

That the acts of the defendants in taking and appropriating the plaintiffs' land and property without compensation, as aforesaid, were and are ultra vires, without warrant of law, and a trespass, and that the acts of the defendants in so taking and appropriating the same, and refusing to make compensation, amount to a legal and constructive fraud upon the plaintiffs.

It was further alleged that the taking of said property in the manner described and the statutes of Iowa under which taken are contrary to and in violation of the fourteenth amendment to the Constitution of the United States in that plaintiffs have been denied due process of law, the equal protection of the law, and their property has been appropriated to a public use without just compensation, and are also in violation of sections 6 and 18 of article 1 of the Constitution of Iowa. It further alleged that upon refusal of the board of supervisors to allow plaintiffs damages because of the excavation of the drainage ditch across their land, they appealed to the district court, and said appeal is still pending, the right thereto being denied and uncertain, and that plaintiffs have suffered irreparable injury, and are without any plain, speedy, and adequate remedy at law. The prayer is that the amount of damages be ascertained and the board of supervisors be ordered to allow the same and to make all necessary assessments and levy the same on the property of the district and attend to the collection thereof, and cause the same to be paid over to plaintiffs, and for other equitable relief.

The defendants demurred on four grounds: (1) That the court was without jurisdiction, as the drainage district (No. 56) was not a legal entity, and the board of supervisors were acting merely as agents thereof; (2) that the court is without jurisdiction, for that, a remedy by filing claim before the board of supervisors and appeal from their action thereon having been provided, the same is exclusive for the recovery of such

damages; (3) that the petition shows on its face that another action is pending; and (4) that the facts stated in the petition do not entitle plaintiffs to the relief demanded. The demurrer was sustained, and, the plaintiffs electing to stand on the ruling, the petition was dismissed. The plaintiffs appeal.— *Affirmed.*

*E. A. & W. H. Morling* and *C. W. Crim,* for appellants.

*J. W. Morse,* for appellees.

Ladd, C. J.—According to the petition, the drainage district was established in substantial compliance with the statutes on the subject, and the improvement made under contract entered into in pursuance of the course prescribed. The main question involved is whether the notice by publication was sufficient to meet the requirements of the Constitution in exacting that the property of plaintiffs might not be taken without due process of law. The statute relating to the establishment of drainage districts and the matter of improvements therein need only be set out in so far as they relate to matters now in controversy. Section 3, chapter 118, 33d General Assembly, reads:

Upon the filing of the return of the engineer, if the same recommends the establishment of the levee or drainage district, the board of supervisors shall then examine the return of the engineer, and if the plan seems to be expedient and meets with the approval of the board of supervisors, they shall direct the auditor to cause a notice to be given, as hereinafter provided. But if it does not appear to be expedient and is not approved, the board of supervisors are hereby authorized to direct said engineer or another engineer, selected by them, to report another plan. At any time prior to the establishment of the district, the plan may be amended, and as amended shall be conclusive, unless appealed from as provided in section nineteen hundred eighty-nine-a6 (1989-a6) of this chapter. When the plan, if any, shall have been finally adopted by the board of supervisors, they shall order the

auditor immediately thereafter to cause notice to be given to the owner of each tract of land or lot within the proposed levee or drainage district, as shown by the transfer books of the auditor's office, including railway companies having rights of way in the proposed district, and to each lienholder or incumbrancer of any land through which or abutting upon which the proposed improvement extends as shown by the county records, and also to all other persons whom it may concern, including actual occupants of the land in the proposed district (without naming individuals), of the pendency and prayer of said petition, the favorable report thereon by the engineer and that such report may be amended before final action, the day set for hearing on said petition and report before the board of supervisors, and that all claims for damages must be filed in the auditor's office not less than five days before the day set for hearing upon the petition, which notice shall be served by publication thereof once each week for two consecutive weeks in some newspaper of general circulation published in the county, the last of which publications shall be not less than twenty days prior to the day set for hearing upon the petition, proof of such service to be made by affidavit of a publisher and filed with the county auditor. No notice need be served by the auditor upon any of the persons hereinbefore described who shall file with said auditor a statement in writing signed by him entering his appearance at said hearing and waiving any additional notice. If, at the date set for the hearing before the board of supervisors, it should appear that any person entitled to notice, as provided in this section, has not been served with notice for the time, or in the manner, as herein provided, the board may postpone said hearing and set another time for the same, and notice of such day of hearing may be served on such omitted parties in the manner and for the same length of time, as provided for in this section, and by fixing such new day for hearing and by adjourning said proceedings to said time, the board of supervisors shall not be held to have lost jurisdiction of the subject-matter of said proceeding, nor of any parties so previously served with notice. Personal service upon any of the parties above described in the manner and for the time required for service of original notices shall be sufficient and make publication of notice as to such persons unnecessary.

Section 1989-a4, Code Supplement:

Any person claiming damages as compensation for or on account of the construction of such improvement shall file such claim in the office of the county auditor at least five days prior to the day on which the petition has been set for hearing, and on failure to file such claim at the time specified, shall be held to have waived his rights thereto.

The drainage district was established prior to the enactment of chapter 88, Acts 34th General Assembly, requiring the assessment of the value of land actually taken in excavating the ditch regardless of whether a claim of damages is filed. Taylor went into possession of the land, March 1, 1911, and, as his contract of purchase was not recorded, he was not entitled to notice under the statute. But he had entered into the contract of purchase with Kirby, September 16, 1910, and the district was not established until January 18, 1911. Whether either party has such an interest in the land as that an action may be maintained is not questioned and the relative obligations between them are not matter for consideration at this time, but see *Stuhr v. Butterfield,* 151 Iowa, 736.

Neither plaintiff had actual knowledge of the establishment of the district prior to the time fixed by the auditor in pursuance of the order of the board of supervisors for the filing of claims, and neither urged any claim at that time, and it is contended by counsel for appellants: (1) That the statute last quoted (section 1989-a4 of the Code Supplement) is not a statute of limitations, and that notwithstanding the failure to file claims, parties without actual knowledge of the requirement retained the common-law right to urge their claim for damages thereafter; and (2) that in any event the notice prescribed in the act quoted is not sufficient to afford the landowners notice and an opportunity of being heard as is necessary to comply with the provision of the fourteenth amendment to the Constitution of the United States, exacting that private property shall not be taken for public use without due process of law.

I. That the owners of the land through which the drainage ditch was excavated were entitled to just compensation for that appropriated and the damages incidental to the taking

1. Drainage: condemnation: constitutional law : due process: compensation: waiver.

is not questioned. Such compensation is an essential element of due process of law, and quite as essential is the opportunity of being heard on the subject before an impartial tribunal. Cooley on Constitution of Limitations, pages 812-817; Randolph, Eminent Domain, sections 316-320. These essentials cannot be obviated by mere forms of procedure, but must be accorded the private owner as a condition of the appropriation of his property to the public use. These principles are too well established, to call for the citation of authority, but see *Chicago, B. & Q. R. Co. v. Chicago,* 166 U. S. 226 (17 Sup. Ct. 581, 41 L. Ed. 979). We quite agree with appellants that these may not be obviated by the creation of a statutory presumption as of waiver when none in fact exists.

It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions. And the state may not in this way interfere with matters withdrawn from its authority by the federal Constitution, or subject an accused to conviction for conduct which it is powerless to prescribe. (*Bailey v. Alabama,* 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191, 200.)

The statute last quoted does not contemplate the creation of a presumption. It is purely a statute of limitation, the validity of which, if the notice provided for in the statute previously quoted is adequate, cannot be doubted. Technically, a waiver is the voluntary or intentional relinquishment of a known right. *Cedar R. Water Co. v. Cedar R.,* 117 Iowa, 250, 258.

But this is not saying that the Legislature may not declare that certain acts or a failure to act, under specified conditions,

shall have the force or effect of a waiver and be held to be such, and this is the purport of this statute. Declaring that the omission to file claims for damages by the time fixed shall be deemed or held to be a waiver thereof is precisely the same as though it were said that it must be filed on or before a specified day and not later.

The statute proceeds as do all those of limitation upon the theory that the claimant has forfeited his right thereto by lapse of time or omission to assert his claim. *Smith v. Dubuque County*, 1 Iowa, 492; *Banse v. Town of Clark*, 69 Minn. 53 (71 N. W. 819) ; *Dunlap v. Pulley*, 28 Iowa, 469.

Moreover, the Legislature, in authorizing the condemnation of a right of way for a drainage ditch, has provided a definite and complete method for the adjustment and adjudication of damages occasioned by the taking and the compensation to the owners of the land through which extended, and, the plaintiffs being duly notified and having failed to avail themselves of the remedies afforded thereby, no other is open to them, and there can be no resort to a common-law remedy. Mills on Eminent Domain, sections 87, 88; *Kaukauna Water Power Co. v. Green Bay & Miss. Canal Co.*, 142 U. S. 254 (12 Sup. Ct. 173, 35 L. Ed. 1004).

The wisdom of fixing a day on or before which all claims must be filed is not open to inquiry. It is essential to the orderly consideration and dispatch of business that there be a time after which claims for damages may not be presented or heard. Otherwise, such an enterprise could never be completed, and claims of different kinds might be urged on *ad infinitum*. The court did not err in construing the statute as one of limitation.

II. The main contention of appellants is that the notice was not adequate. That notice by publication is sufficient in cases like this was determined in *Johnson v. Story County*.

2. SAME: notice: jurisdiction.   148 Iowa, 539, and also in *Collins v. Board of Supervisors*, 158 Iowa, 322. These decisions are in harmony with those of other states, and the Supreme

Court of the United States. *Wight v. Davidson,* 181 U. S. 371 (21 Sup. Ct. 616, 45 L. Ed. 900).

As said in *Tyler v. Judges of the Court of Registration,* 175 Mass. 71 (55 N. E. 812, 51 L. R. A. 433):

> Looked at either from the point of view of history or of the necessary requirements of justice, a proceeding in rem . . . may be instituted and carried to judgment without personal service upon claimants within the state, or notice by name to those outside of it, and not encounter any provision of either Constitution. Jurisdiction is secured by the power of the court over the res.

The Legislature having been given the power by the Constitution to appropriate property for the public use, upon the payment of adequate compensation, the authority to authorize the proceedings by which such appropriation shall be made necessarily is implied. Whatever these may be, the owners from whom the appropriation is to be made must have notice sufficient to apprise them what is to be done, and for sufficient time to afford them the opportunity to have a hearing before a competent tribunal. Such notice may be by publication, but for how long a time before the hearing? This is largely a matter of legislative discretion. The time may not be so brief that if the owner were to read the notice when first published he could not, with reasonable diligence, prepare for and reach the place of hearing so as to present his claim; that is, it may not be arbitrarily so limited as that were the published notice to reach him, he would not have the chance to present his claim. On the other hand, it need not be for so long a time as to insure knowledge to every one. All necessary is that the publication of notice be made under such circumstances that persons of ordinary intelligence having an interest in the subject-matter, living in the community, will be reasonably likely either to read the notice as published or learn thereof from or through other sources. This is the theory on which service of notice by publication generally is sus-

3. SAME: notice by publication: sufficiency.

tained.  Reaching those residing in the immediate community, it is assumed to have come to the knowledge of the nonresident through those to whom he has intrusted his property or who are representing him, and if he has not taken these measures of protection and fails to get the notice as published, it is his misfortune, and he must bide the consequences.  *Huling v. Kaw Valley Ry. & Imp. Co.*, 130 U. S. 559 (9 Sup. Ct. 603, 32 L. Ed. 1045).  The time allowed should be ample to afford a reasonable probability that he would become informed of the proceedings against his property, and be fairly able to assert his right before it is finally barred.

Few decisions are to be found dealing with this question.  In *Huling v. Kaw Valley Railway & Improvement Co., supra,* the notice was published for thirty days before the hearing.  In *Wabash Railroad Co. v. Defiance,* 167 U. S. 88 (17 Sup. Ct. 748, 42 L. Ed. 87), the court, speaking through Brown, J., said:

By the Ohio statute, persons who claim that they will sustain damages by reason of such an improvement are required to file their claim with the clerk of the corporation within two weeks after such service or the completion of the publication of the notice; and persons failing to so file their claim 'shall be deemed to have waived the same, and shall be barred from filing a claim or receiving damages.'  The Supreme Court held that these statutes had been in force and acted upon for many years; that their constitutionality had never been called in question; that they were applicable to the street improvements in question, and that under them the plaintiff's claim for compensation, if it had any, was waived and barred by failing to file it within the time required.  'The plaintiff,' said the court, 'is charged with knowledge of the law, and, in the absence of any showing to the contrary, must be presumed to have voluntarily withheld its claim for compensation and damages, and thus prevented an inquiry into and an assessment of them; and it seems clear that an owner, who has been afforded an opportunity of having compensation and damages assessed him, in the constitutional mode, for property taken or injured in the making of a street im-

provement, and has failed to avail himself of that opportunity, cannot, after having thus waived his right, enjoin the improvement on the ground that compensation has not been paid or tendered him. (See s. c., 52 Ohio St. 262, 40 N. E. 89.)

*Winona & St. Peter Land Co. v. Minnesota,* 159 U. S. 526 (16 Sup. Ct. 83, 40 L. Ed. 247), involved statutes of Minnesota for the collection of taxes on property omitted from general assessment and taxation which, in substance, provided that the county auditor file a list of such property, together with the name of the owner of the land and the amount of delinquent taxes for each year, with the clerk of the district court; that this list, with notice in the form prescribed, be published in some newspaper of general circulation in the county for at least two weeks, and any person interested was required to interpose his objection within twenty days thereafter, and the court said, concerning the notice:

That the notice is not personal, but by publication, is not sufficient to vitiate it. Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceedings shall be taken a notice by publication to all parties interested to appear and defend is suitable, and one that sufficiently answers the demand of due process of law. *Taylor v. Secor* (State R. Tax Cases) 92 U. S. 575, 609 (23 L. Ed. 663, 672) ; *Hagar v. Reclamation Dist. No. 108,* 111 U. S. 701, 710 (4 Sup. Ct. 663, 28 L. Ed. 569, 572) ; *Cincinnati, N. O. & T. P. R. Co. v. Kentucky* (Kentucky R. Cases) 115 U. S. 321 (6 Sup. Ct. 57, 29 L. Ed. 414) ; *Lent v. Tillson,* 140 U. S. 316, 328 (11 Sup. Ct. 825, 35 L. Ed. 419, 425) ; *Pittsburg, C., C. & St. L. R. Co. v. Backus,* 154 U. S. 421 (14 Sup. Ct. 1114, 38 L. Ed. 1031). It cannot be doubted under these various authorities that in respect to the collection of these taxes ample provision is made for notice, and therefore that it cannot be adjudged that the owner is, for want thereof, deprived of his property without due process of law.

The Supreme Court of Wisconsin reached a different conclusion in *Hayes v. Douglas County,* 92 Wis. 429 (65 N. W.

482, 31 L. R. A. 213, 53 Am. St. Rep. 926).   Bonds had been
issued for street improvements and the right to question the
validity of proceedings prior thereto was challenged for that
the particular bond had been issued after giving thirty days'
notice by publication in a newspaper of the city's intention
to issue bonds therefor and the charter provided that there-
after "said" bonds shall be conclusive proof of the regularity
of all proceedings upon which the same are based.   The court,
speaking through Newman, J., said:

No doubt, under a statute which provides for actual
notice to the owner, a shorter limitation could be held rea-
sonable than where constructive notice only is provided.   Un-
der this statute, many an owner may, without fault, be with-
out actual knowledge of the pendency of proceedings against
his property, until the bar of this statute has foreclosed his
right; and this may all well happen before any work, such as
might arrest the attention of resident owners, is actually com-
menced under the contract.   It is not questioned that all the
proceedings relating to the assessment may be supported on
notice by publication only; but the fact that the notice pro-
vided for is constructive only is an element proper to be
considered in determining whether the time limited affords
reasonable opportunity for the owner to assert his right.   No
doubt such time should be allowed as would give a reasonable
chance to acquire actual knowledge of the pendency of the
proceedings against his property, and to ascertain and assert
his rights.   No absolute rule can be laid down as to what
length of time will be deemed reasonable for the government
of all cases alike.   Different circumstances require different
rules.   What would be reasonable in one class of cases would
be entirely unreasonable in another.   *Wheeler v. Jackson,*
137 U. S. 245, 255 (11 Sup. Ct. 76, 34 L. Ed. 659).   While
it is, no doubt, convenient and desirable, on the part of the
municipality, that all questions in respect to the validity of
such proceedings shall be put at rest as soon as may be, still
there is no such exigency as to justify even an apparently
unfair abbreviation of the rights of property owners or undue
advantage taken.   The time allowed should be ample to afford
a reasonable probability that he would become informed of
the proceedings against his property, and be fairly able to

assert his right, before it is finally barred. It is considered that, plainly, this statute does not afford such reasonable opportunity, and cannot be sustained as a valid limitation. A short statute of limitation is not an allowable substitute for due process of law. It is utterly subversive of that constitutional protection to private rights of property. The fact that such short limitations have been sustained by some courts does not persuade the court that they are just and supportable on principle.

We cannot agree with that court that such publication of the notice would be no notice at all, as must have been held in saying the time fixed by the Legislature was wholly inadequate. Moreover, the court seems to confuse the notice with the time to elapse after the publication. The statute of this state under consideration exacts the publication ''once each week for two successive weeks.'' This is the notice, and thereupon jurisdiction attaches to the land. Thereafter, that is, after the last publication, those interested have fifteen days within which to ascertain and file their claims for damages, and we are not ready to say that in this age of rapid transit and communication this period, together with that consumed in publishing, is so brief that it can be said that those interested were without notice and opportunity to be heard, and that the taking of the property under these circumstances was spoliation and plunder. Within reasonable limits, the character of the notice and the time given before hearing are matters of legislative discretion, and it ought not to be said that the Legislature in prescribing the requisite notice did so arbitrarily and in disregard of the constitutional provisions, and thereby cut off all reasonable opportunity to be heard. That body might well have concluded, in view of the discussions ordinarily leading up to improvements such as drainage ditches, the proceedings, and their publicity ordinarily prior to the publication of the notice, that the publication of the notice for two successive weeks and the lapse of time thereafter would be reasonably likely to carry information concern-

ing the pendency of the proceedings to all persons of ordinary intelligence in the community interested, either directly or indirectly. If so, the notice prescribed meets the requirements of due process of law, and cannot be denounced as no notice at all. The reasoning of the Wisconsin case is sound enough, except the conclusion as to length of time notice must be given, which is not in harmony with that of the Supreme Court of the United States, whose interpretation of the fourteenth amendment must be regarded as final. It follows that the statute quoted is not in conflict with that portion of the fourteenth amendment of the Constitution of the United States, guaranteeing to every citizen equal protection, and prohibiting the taking of property without due process of law.

III. The omission of the notice to say that the report of the engineer might be amended before final action was a mere defect, not going to the fact of giving notice in fact, and the

4. SAME: notice.

circumstance that it required claims to be filed on or before a day named, which was six days before the time of hearing, was not inconsistent with the statute, exacting that the notice require the filing of claims "not less than five days before the day set for hearing."

The case involves a hardship, as does every case where an owner suffering an injury has omitted, through ignorance, inattention, or misfortune, to avail himself of the remedy

5. SAME: claim for damages: failure to file: equitable relief.

afforded by law within the time within which this may be done, but this furnishes no ground for equitable relief, and the right thereto in this class of cases was denied in *Collins v. Board of Supervisors*, 158 Iowa, 322. The decision of other questions argued is rendered unnecessary by what has been said. The ruling of the district court has our approval, and the judgment is—*Affirmed.*

All the Justices concur.